**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.** |
| **v.** | ) | FILED: JUNE 4, 2008 |
| | ) | 08CV3227   PH |
| **JILL GARNER, JAN A. MIX, JOY L. MIX and ANGELA L. MANTOVANI** | ) | JUDGE GOTTSCHALL |
| | ) | MAGISTRATE JUDGE DENLOW |
| **Defendants.** | ) | |

## COMPLAINT FOR INTERPLEADER

Plaintiff, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY

("Provident Life"), by its attorneys, Michael J. Smith and Warren von Schleicher, presents its

Complaint for Interpleader, pursuant to 28 U.S.C. §§ 1335 and 1397, and Fed. R. Civ. P 22, and

requests the court to enter an order directing and authorizing Provident Life to deposit with the

Clerk of the Court, or other court ordered escrow representative, the life insurance proceeds

which are legally due and owing by reason of a life insurance policy under which WILLIAM B.

MIX, ("Decedent") was insured, and states as follows:

### INTERESTED PARTIES

1.     At all times material herein, Provident Life was and is a corporation duly

organized and existing under and by virtue of the laws of the state of Delaware with its principal

place of business in Chattanooga, Tennessee.  Provident Life is duly licensed and authorized to

issue life insurance policies in the State of Illinois.

2.     At all times material herein, JOY L. MIX ("Joy Mix"), the Decedent's daughter,

who is a person with an interest in the matters involved herein, was residing at 4277 Waterford

Way, Gurnee, Illinois.

3.      At all times material herein, ANGELA L. MANTOVANI ("Mantovani"), the Decedent's ex-wife, who is a person with an interest in the matters involved herein, was residing at 116 South Columbus Street, North Pekin, Illinois.

4.      At all times material herein, JILL GARNER ("Garner"), the Decedent's daughter, who is a person with an interest in the matters involved herein, was residing at 22 Corvette Lane, Carthage, Tennessee.  Upon information and belief, Jill Garner was formerly known as Jill Lorene Mix.

5.      At all times material herein, JAN A. MIX ("Jan Mix"), the Decedent's daughter, who is a person with an interest in the matters involved herein, was residing at 192 Virginia Street, Dyess Air Force Base, Texas.

## **CONFLICTING CLAIMS**

6.      On or about May 28, 1985, the Decedent submitted an application to Provident Life for life insurance and listed Alex Neal Rinehurt as the beneficiary.  A copy of the Decedent's application (with the Social Security number redacted) which lists the beneficiary designation is attached hereto as Exhibit A.  On August, 1, 1985, Provident Life issued Life Insurance Policy No. 34434939701 ("Policy") to the Decedent.  A true and correct copy of the Policy (with the Social Security number redacted) is attached hereto as Exhibit B.

7.      The Policy issued to the Decedent provides insurance in the amount of $15,739. See Exhibit B, Page 3.

8.     On November 19, 1993, the Decedent submitted a change of beneficiary form to Provident Life. A true and correct copy of the change of beneficiary form is attached hereto as Exhibit C. The Decedent named Mantovani as the primary beneficiary and Jill Lorene Mix, the Decedent's daughter, currently known as Jill Garner, as the contingent beneficiary. At the time the change of beneficiary was submitted, Mantovani was the Decedent's wife.

9.     On May 25, 2006, the Circuit Court of Tazewell County entered a Judgment of Dissolution of Marriage between the Decedent and Mantovani. A copy of the Judgment of Dissolution of Marriage is attached hereto as Exhibit D. The court ordered that "The issue of the allocation of life insurance policies and any cash value thereof is reserved." *Id.* at page 6, ¶ J.

10.     The Decedent's Certificate of Death, dated May 8, 2007, states that the cause of death was anoxic encephalopathy, out of hospital cardiac arrest and an acute inferior myocardial infarction. A copy of the Medical Certificate of Death (with the Social Security number redacted) is attached hereto as Exhibit E.

11.     Provident Life is the holder of certain monies due and owing under the terms of the Decedent's Policy.

12.     On or about May 16, 2007 Provident Life received three Proof of Death claim forms, from each of the Decedent's three daughters, Garner, Joy Mix and Jan Mix, requesting the proceeds of the Policy. Provident Life received, with the Proof of Death forms, a cover letter prepared by Garner indicating that the Decedent did not wish for Mantovani, Decedent's ex-wife, to receive any life insurance benefits, a letter dated May 15, 2006 from the Decedent's divorce attorney to Mantovani's divorce attorney, a portion of the Dissolution of Marriage, and a copy of the Medical Certificate of Death. A copy of the documents submitted to Provident Life

from Garner, Joy Mix and Jan Mix (with Social Security numbers redacted) are attached hereto as Group Exhibit F.

13.    A May 15, 2006 letter, prepared by David Lynch, Decedent's divorce attorney and sent to Daniel Harrod, Mantovani's divorce attorney, which is attached as part of Group Exhibit F, relates to the divorce proceedings between the Decedent and Mantovani.  In the letter, David Lynch objects to Mantovani carrying life insurance on the Decedent.  The Decedent's divorce attorney enclosed an amended Judgment reserving the issue.  *Id.*  See the May 15, 2006 letter, without amended Judgment, attached as part of Group Exhibit F.

14.    On June 14, 2007, the Circuit Court for Tazewell County entered an order appointing Garner as the Administrator of the Decedent's estate.  A copy of the June 14, 2007 Order is attached hereto as Exhibit G.

15.    Shortly thereafter, on June 26, 2007, Louis Miller, an attorney retained by the Decedent's estate, sent a letter to Provident Life disputing Mantovani's legal right to claim any part of the Policy proceeds.  A copy of the June 26, 2007 letter is attached hereto as Exhibit H.

16.    On November 12, 2007, Mantovani submitted her Proof of Death claim to Provident Life seeking to recover the Policy proceeds.  A copy of Mantovani's Proof of Death claim form (with Social Security numbers redacted) is attached hereto as Exhibit I.

17.    Provident Life is simply a stakeholder with respect to the issue of to whom the aforesaid life insurance proceeds are to be paid and is a disinterested party in the outcome of this litigation.

18.    Provident Life has no legal proprietary interest in the outcome of any dispute that may exist among the defendants in this litigation regarding the proceeds that are due under the Policy and has been unfairly drawn into this dispute and has been required to file this interpleader action as the only recourse to resolve any and all possible disputes among the defendants with respect to the payment of the proceeds of the Policy.

19.    Provident Life is willing to tender to the Clerk of the Court, or other court ordered escrow representative, monies which are legally due from Provident Life pursuant to the terms and conditions of the Policy, and each of the defendants should be required to interplead with each other to determine their respective rights to any of the proceeds which are due under the Policy.  Upon tender of the aforesaid monies, Provident Life should be released and dismissed from any further involvement or participation in this litigation.

20.    Provident Life has been required to expend monies in the nature of costs and attorneys fees in conjunction with its effort to resolve the issues among the conflicting claims to the proceeds of the Policy, including the filing and service of this interpleader action.  Pursuant to 28 U.S.C. § 1335 Provident Life should be awarded, from the proceeds of the Policy, its costs and attorneys' fees.

WHEREFORE, plaintiff, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, respectfully requests that (i) an order be entered directing and authorizing Provident Life to deposit the monies that are legally due pursuant to the Policy under which the Decedent, William L. Mix, was insured, with the Clerk of the Court, or other court ordered escrow representative; (ii)  that the defendants be required to interplead with each other to determine their respective rights to any of the proceeds that are due under the Policy; (iii) that an order be entered declaring that Provident Life has no further liability to any of the defendants as

potential beneficiaries under the Policy; (iv) that Provident Life be released and dismissed from

this litigation, with prejudice; and that (v) Provident Life be awarded its attorneys' fees and costs

incurred herein, along with any and all other relief the Court deems reasonable, pursuant to 28

U.S.C. § 1335.

Respectfully submitted,

By: /s/ Michael J. Smith
Attorney for Plaintiff, Provident Life and Accident
Insurance Company

Michael J. Smith
Warren von Schleicher
Smith, von Schleicher & Associates
39 S. LaSalle St. Suite 1005
Chicago, Illinois 60603
(312) 541-0300

# COMPLAINT

# EXHIBIT A

Application for insurance to **PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY**

| Name of Insured | Last | First | | Sex | Age | Date of Birth | Employee Identification | State of Residence |
|---|---|---|---|---|---|---|---|---|
| | MIX | W L | $ 48.50 | M | 43 | 0 | 23-42 | IL |

Name of Employer: 111 51 5 001 N-SMOKE $ 42,539 $ 20,936
ECC SMOKE $ 31,980 $ 15,739
S05B5 06-01-85 FLEX PREM ADJUSTABLE LIFE

Payroll Deduction (Agent Use)
E _____
S _____
C _____ .96
P _____ 24.25
Total 25.21

| Owner's Social Security Number | Effective Date | Plan Description |
|---|---|---|

Face Amount of Insurance $ 15,739   ☐ A D B   ☐ WVR
Insured Payroll Deduction / CTR PRO $ 24.25   $ .96
☐ WK   ☐ 4-WK   ☐ S-MO   ☐ 2-WK   ☑ MO

Name of Owner (if other than Proposed Insured)
Last _____ First _____ M I _____
Owner's Social Security Number _____

Owner's Address No. and Street _____ City _____ State _____ Zip _____

H O Use
GRP _____
LOC _____
BUC _____
STATE _____

Beneficiary and Home Address: Mrs. Neal Rinehart   Relation to Proposed Insured: Friend

Contingent Beneficiary _____   Relation to Proposed Insured _____

Have you smoked cigarettes or used any other form of tobacco in the last 12 months? ☑ Yes ☐ No
If No, you are eligible for Non-Smoker Rates

Is the insurance applied for intended to replace or change any existing insurance or annuities? ☐ Yes ☑ No

Do you presently have one or more FUTURE Policies in force? ☐ Yes ☑ No

Is Children's Term Insurance to be included? ☑ Yes ☐ No   If Yes   Amount of Insurance per child $ 2,000

THE APPLICANT AGREES AS FOLLOWS: 1. To the best of his or her knowledge and belief all of the foregoing statements and answers are true, complete and correctly recorded. 2. Subject to the policy provisions, the insurance will become effective on the above effective date, provided the Proposed Insured is actively at work and/or performing his or her normal duties and is not disabled on such date; otherwise the insurance will become effective on the first day of the month immediately following the date the Proposed Insured returns to active work thereafter.
I authorize my employer to deduct the premiums for this insurance from my earnings

Dated at Peoria, IL _____ this 28 day of May _____ 19 85

Witnessed by S. Notzinger   Signature of Employee Applicant X William L Mix

Agent's Code C 2   **TO BE COMPLETED BY AGENT**

Do you have knowledge or reason to believe that proposed insurance is intended to replace any existing insurance or annuities? ☐ Yes ☑ No

F-65770 (8-84)   (Signature of Agent) S Notzinger

PLACL00026

# COMPLAINT

# EXHIBIT B

04/09/08



PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY
1 FOUNTAIN SQUARE
CHATTANOOGA, TENNESSEE  37402

OWNER:          W L MIX
ADDRESS:        512 W BITTER SWEET
                WASHINGTON        IL 61571


INSURED:        W L MIX
CONTRACT #:
GROUP #:        111515001      0001
LOCATION #:     ECC
EMPLOYER:       CENTRAL ILLINOIS LIGHT CO/AMEREN S


**Hello, and Welcome to UnumProvident!**

We are excited to present you with the life insurance contract for which you recently applied.  We are extremely pleased that you have chosen UnumProvident as your insurance provider on this important coverage.

Please read your contract thoroughly.  If questions arise concerning your contract, please call our Home Office in Chattanooga and talk with your Account Representative.

After reviewing your contract, please be sure to store it in a safe place for future reference.

We look forward to providing you with many years of superior customer service.  Thank you for your business and your confidence in UnumProvident.


TOLL-FREE TELEPHONE NUMBER:
  Please dial 1-800-635-5597


UNUMPROVIDENT BUSINESS HOURS:
  8:00 a.m. to 4:45 p.m. EST Monday through Friday
  UnumProvident is closed for all National Holidays.


NOTE:  If you are no longer paying for your coverage through payroll deduction, ask for the Direct Bill Unit.


                         W L MIX,

Below are steps to aid your Account Representative in providing better customer service in the event you wish to make changes to your coverage. Most changes can be made on a Customer Service Request Form which may be obtained from your Personnel/Payroll Office or by calling your Account Representative.

1.  Name Change — If a change is necessary due to marriage, divorce or a correction, etc., complete a customer service request form.

2.  Address Change — Please notify UnumProvident on a customer service request form of any change in your home address.

3.  Surrender of Contract — According to the provisions in your contract, you may surrender your insurance contract for the cash surrender value.  Please return the contract with a completed customer service request form.

4.  Loans — You may borrow against your cash value according to the stipulations in your contract.  A customer service request form may be used for this request.

5.  Beneficiary Change — Any changes to be made pertaining to the primary or contingent beneficiary of your contract can be done on the customer service request form.  Be sure to list the full name of each beneficiary, the relationship of that beneficiary to you and the distribution of the proceeds by percentage.

6.  Termination of Employment — You may continue your insurance coverage upon termination of employment by going on Direct Bill.  This bill will be mailed to your home address.   To be billed at home, be sure to sign a Change of Status Form in your personnel office or contact your Account Representative.

Please make sure the Customer Service Request Form is always:

•   Signed by the owner of the contract

•   Witnessed by a financially disinterested party

•   Dated as of the date the form was completed

W L MIX,

111515001        S0585        ECC                              PAGE 1-IL

Provident Life and Accident Insurance Company
Fountain Square
Chattanooga, Tennessee 37402

The Company will pay the Death Benefit of this policy to the Beneficiary immediately
upon receipt of due proof of the death of the Insured prior to the Maturity Date. The
Company will pay the Owner the Cash Value on the Maturity Date if the Insured is living
on that date.  The Company will make this payment and provide the other benefits,
rights and privileges, subject to the provisions of this policy.

This contract is made in consideration of the application for it and the payment of
premiums as provided.

All provisions on this and the following pages are part of this policy.

### NOTICE OF TWENTY DAY RIGHT TO RETURN POLICY

This policy may, at any time within twenty days after its receipt by the Owner, be
returned by delivering it or mailing it to the Company or to the Agent through whom
it was purchased.  Immediately upon such delivery or mailing, this policy will be
deemed void from the beginning, and any premium paid on it will be refunded.

## L I F E   I N S U R A N C E   P O L I C Y

W L MIX, the Insured
Policy Number

Thomas R. Watjen
President and Chief Executive Officer

Susan N. Roth
Secretary

FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY
ADJUSTABLE DEATH BENEFIT PAYABLE PRIOR TO THE MATURITY DATE
FLEXIBLE PREMIUMS PAYABLE AS SHOWN ON PAGE 3
NONPARTICIPATING-NO DIVIDENDS

Countersigned_____
                              Licensed Resident Agent

F-65679                      W L MIX,

## ALPHABETIC GUIDE TO YOUR POLICY

Page

Age . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
Agent's Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
Annual Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
Assignment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
Basis of Computation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Beneficiary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
Cash Value . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Changes In Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Continuation of Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
Death Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Effective Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
Grace Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
Incontestability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
Indebtedness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
Interest Credits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Issue Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
Loan Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Loan Repayment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Loan Value . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Misstatement of Age . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
Monthly Anniversary Day . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
Monthly Deduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Nonparticipating . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
Optional Modes of Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Owner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
Partial Surrender . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Planned Periodic Premiums . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
Policy Loan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Premium Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
Proceeds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
Projection of Benefits and Values . . . . . . . . . . . . . . . . . . . . . . . . .  8
Reinstatement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
Risk Charge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Risk Charge Rates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
Suicide . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
Surrender and Surrender Value . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Unscheduled Premiums . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

### SUPPLEMENTARY BENEFITS

The supplementary benefits, if any, listed on Page 3, are described in the Supple-
mentary Benefit provisions which follow.

### READ THIS POLICY CAREFULLY

This is a legal contract between the Owner and the Company.

# P O L I C Y   S P E C I F I C A T I O N S

FLEXIBLE PREMIUM ADJUSTABLE LIFE
  INITIAL PREMIUM -  $24.25 monthly
  PLANNED PERIODIC PREMIUM -  $24.25 monthly

|  | MONTHLY CHARGE | EXPIRY DATE |
|---|---|---|
| SUPPLEMENTARY BENEFITS-- | | |
| INSURED'S TOTAL DISABILITY BENEFIT | $1.27 | 08-01-2002 |
| $24.25 Monthly Disability Benefit | | |

RISK CLASS - SMOKER
MINIMUM FACE AMOUNT - $4,000
MINIMUM GUARANTEED INTEREST RATE - 4.5% per Annum, .36748% per month
POLICY LOAN INTEREST RATE -  8% per Annum in arrears
EXPENSE CHARGE RATES - FIRST POLICY YEAR:  35% for Planned Periodic Premiums, and
                                        8% for any additional premiums.
             THEREAFTER:  3% if paid annually or by payroll deduction, and
                         8% if paid by any other method.

PREMIUM COLLECTION CHARGE - $ .75 per month if paid annually or by payroll deduction
                        $1.50 per collection if paid by any other method

INCREASE CHARGE - $2.00 per $1,000 increase in Face Amount,
                applies only for the first policy month of increase

SURRENDER CHARGE - $25 per policy for 20 years, zero thereafter

PARTIAL SURRENDER SERVICE CHARGE - $25 per Partial Surrender
PARTIAL SURRENDERS PERMITTED DURING A POLICY YEAR - 2

## P R O V I D E N T   P O L I C Y

| ON THE LIFE OF | PROVIDING A FACE AMOUNT OF |
|---|---|
| W L MIX<br>THE INSURED | $15,739 |

AGE AT ISSUE DATE - 43
ISSUE DATE - August 1, 1985

FLEXIBLE PREMIUM ADJUSTABLE LIFE POLICY

MATURITY  DATE - August 1, 2037 - Policy will terminate prior to this date if the
premiums paid are not sufficient to continue the policy in force to this date.

*4500103434939701000053*

GUARANTEED MAXIMUM RISK CHARGE RATES

Nonsmoker Risk Class

Age Last Birthday

| Attained Age | Monthly Rate per $1000 | Attained Age | Monthly Rate per $1000 | Attained Age | Monthly Rate per $1000 |
|---|---|---|---|---|---|
| 0 | 0.20690 | 32 | 0.14929 | 64 | 1.85634 |
| 1 | 0.08254 | 33 | 0.15597 | 65 | 2.03683 |
| 2 | 0.07920 | 34 | 0.16432 | 66 | 2.22879 |
| 3 | 0.07753 | 35 | 0.17350 | 67 | 2.43142 |
| 4 | 0.07420 | 36 | 0.18519 | 68 | 2.64652 |
| 5 | 0.07086 | 37 | 0.19855 | 69 | 2.88535 |
| 6 | 0.06753 | 38 | 0.21442 | 70 | 3.15501 |
| 7 | 0.06419 | 39 | 0.23280 | 71 | 3.46702 |
| 8 | 0.06169 | 40 | 0.25285 | 72 | 3.82964 |
| 9 | 0.06085 | 41 | 0.27458 | 73 | 4.24436 |
| 10 | 0.06169 | 42 | 0.29799 | 74 | 4.70310 |
| 11 | 0.06586 | 43 | 0.32224 | 75 | 5.19771 |
| 12 | 0.07336 | 44 | 0.34900 | 76 | 5.72078 |
| 13 | 0.08421 | 45 | 0.37745 | 77 | 6.26743 |
| 14 | 0.09672 | 46 | 0.40758 | 78 | 6.84166 |
| 15 | 0.10923 | 47 | 0.43939 | 79 | 7.46481 |
| 16 | 0.12175 | 48 | 0.47373 | 80 | 8.15975 |
| 17 | 0.13093 | 49 | 0.51144 | 81 | 8.95020 |
| 18 | 0.13844 | 50 | 0.55419 | 82 | 9.85537 |
| 19 | 0.14261 | 51 | 0.60199 | 83 | 10.87400 |
| 20 | 0.14512 | 52 | 0.65569 | 84 | 11.98990 |
| 21 | 0.14512 | 53 | 0.71699 | 85 | 13.18347 |
| 22 | 0.14345 | 54 | 0.78421 | 86 | 14.44494 |
| 23 | 0.14178 | 55 | 0.85568 | 87 | 15.77107 |
| 24 | 0.13927 | 56 | 0.93142 | 88 | 17.16553 |
| 25 | 0.13677 | 57 | 1.00976 | 89 | 18.64562 |
| 26 | 0.13510 | 58 | 1.09406 | 90 | 20.23621 |
| 27 | 0.13427 | 59 | 1.18520 | 91 | 21.98546 |
| 28 | 0.13510 | 60 | 1.28741 | 92 | 23.97963 |
| 29 | 0.13677 | 61 | 1.40413 | 93 | 26.42036 |
| 30 | 0.14011 | 62 | 1.53794 | 94 | 29.76061 |
| 31 | 0.14428 | 63 | 1.68893 | | |

Based on Modification 1980-CSO-B of the
1980 Commissioners Standard Ordinary
Mortality Table

## SMOKER MULTIPLE RATINGS

### To Be Applied To Nonsmoker Guaranteed Risk Charge Rates

### Age Last Birthday






| Age | Smoker Multiple Rating | Age | Smoker Multiple Rating | Age | Smoker Multiple Rating |
|-----|------------------------|-----|------------------------|-----|------------------------|
|     |        | 41 | 1.381 | 68 | 1.445 |
| 15  | 1.347  | 42 | 1.396 | 69 | 1.436 |
| 16  | 1.346  | 43 | 1.417 | 70 | 1.426 |
| 17  | 1.344  | 44 | 1.434 | 71 | 1.414 |
| 18  | 1.331  | 45 | 1.449 | 72 | 1.401 |
| 19  | 1.333  | 46 | 1.462 | 73 | 1.384 |
| 20  | 1.333  | 47 | 1.475 | 74 | 1.367 |
| 21  | 1.333  | 48 | 1.487 | 75 | 1.352 |
| 22  | 1.328  | 49 | 1.500 | 76 | 1.340 |
| 23  | 1.315  | 50 | 1.509 | 77 | 1.326 |
| 24  | 1.302  | 51 | 1.518 | 78 | 1.312 |
| 25  | 1.287  | 52 | 1.527 | 79 | 1.297 |
| 26  | 1.275  | 53 | 1.532 | 80 | 1.282 |
| 27  | 1.270  | 54 | 1.534 | 81 | 1.265 |
| 28  | 1.265  | 55 | 1.542 | 82 | 1.248 |
| 29  | 1.268  | 56 | 1.540 | 83 | 1.230 |
| 30  | 1.268  | 57 | 1.528 | 84 | 1.211 |
| 31  | 1.272  | 58 | 1.521 | 85 | 1.192 |
| 32  | 1.282  | 59 | 1.530 | 86 | 1.171 |
| 33  | 1.289  | 60 | 1.526 | 87 | 1.150 |
| 34  | 1.294  | 61 | 1.506 | 88 | 1.129 |
| 35  | 1.308  | 62 | 1.500 | 89 | 1.106 |
| 36  | 1.320  | 63 | 1.494 | 90 | 1.087 |
| 37  | 1.334  | 64 | 1.486 | 91 | 1.071 |
| 38  | 1.342  | 65 | 1.477 | 92 | 1.055 |
| 39  | 1.353  | 66 | 1.466 | 93 | 1.039 |
| 40  | 1.368  | 67 | 1.454 | 94 | 1.024 |

**DEFINITIONS**

**AGE.** When used in this policy, age means age as of the last birthday.

**ISSUE DATE.** The Issue Date is the date from which policy years, months and anniversaries will be determined.

**MONTHLY ANNIVERSARY DAY.** The Monthly Anniversary Day is the same day of each calendar month as the day of the Issue Date shown on Page 3 of this policy.

**EFFECTIVE DATE.** The effective date of coverage under this policy shall be as follows:

1. For all coverage provided in the original application, the effective date shall be the Issue Date.

2. For any increase or addition to coverage, the effective date will be shown on an amended Page 3.

**INDEBTEDNESS.** Indebtedness means the principal of any outstanding policy loan under this policy, plus any interest due or accrued thereon.

**PROCEEDS.** Proceeds means the amount payable on the Maturity Date, on the surrender of this policy before the Maturity Date or upon the death of the Insured. Any indebtedness will be deducted from the proceeds.

**GENERAL PROVISIONS**

**CONTRACT.** The entire contract consists of this policy, the attached copy of the application and any supplemental application for changes to this policy. In the absence of fraud, all statements made in a written application will be deemed representations and not warranties. No statement may be used to invalidate this policy or to defend against a claim under it unless:

1. Such statement is contained in a written application; and
2. A copy of such application is attached to this policy when issued or made a part of this policy when coverage applied for under a supplemental application is approved.

**OWNER.** The Insured is the Owner of this policy unless stated otherwise in the contract or changed at a later date. During the lifetime of the Insured, the Owner will have the sole and absolute power to exercise all rights and privileges, subject to the rights of any irrevocable beneficiary or assignee of record.

A change of Owner may be made during the lifetime of the Insured by written request satisfactory to the Company. No change of Owner will take effect until such request is received at the Home Office. When such request is received, the change will be effective as of the date the request was signed, whether or not the Insured or the new Owner or the Owner prior to the date of request is living when the request for change is received. The liability of the Company will be discharged to the extent of any payment made or action taken prior to such receipt.

**BENEFICIARY.** The beneficiary will be as named in the application until changed. The Owner or his estate will be the beneficiary if:

1. No beneficiary designation is in effect at the Insured's death; or
2. If there is no designated beneficiary living at the Insured's death.

The Owner may change the beneficiary during the lifetime of the Insured. However, if a beneficiary has been named irrevocably, a change can be made only

with the consent of such beneficiary. Any request for change of beneficiary and the consent of any irrevocable beneficiary must be in writing and satisfactory to the Company. No change of beneficiary will take effect until such request is received at the Home Office. When such request is received, the change will become effective as of the date the request was signed, whether or not the Insured is living when the request for change is received. The liability of the Company will be discharged to the extent of any payment made or action taken prior to such receipt. A change of beneficiary will be considered to have revoked any prior election of a Settlement Option.

The interest of any beneficiary will end at his death prior to the death of the Insured.

If any beneficiary should die at the same time as the Insured or within the twenty-four hour period immediately following the death of the Insured, claim settlement will be made as if such beneficiary had died before the Insured. The liability of the Company will be discharged to the extent of any payment made or action taken prior to the receipt of proof of the death of such beneficiary.

**ASSIGNMENT.** The Owner may assign this policy. If a beneficiary has been named irrevocably, the assignment can be made only with his written consent. The interest of any beneficiary and any person other than a prior assignee of record will be subject to any assignment received by the Company. No assignment will be recognized by the Company unless it is in writing and until the original or a true copy of it is received at the Home Office. The liability of the Company will be discharged to the extent of any payment made or action taken prior to such receipt. The Company does not assume responsibility for the validity or effect of any assignment. All assignments will be subject to any indebtedness on this policy.

**INCONTESTABILITY.** This policy will not be contested by the Company after it has been in force, during the lifetime of the Insured, for two years from the Issue Date. However, any increase in coverage effective after the Issue Date will be incontestable only after such increase has been in force during the lifetime of the Insured for two years from the effective date of such increase.

**SUICIDE.** If the Insured dies by suicide, while sane or insane, within two years from the Issue Date, the proceeds payable by the Company, in place of all other benefits, will be limited to the premiums paid less any indebtedness and less any partial surrenders. This amount will be paid in one sum to the beneficiary.

For any increase in Face Amount, the two year suicide exclusion period will be measured from the effective date of any such increase, and the amount payable by the Company during the two year suicide exclusion period with respect to such increase will be limited to the risk charges deducted for such increase.

**MISSTATEMENT OF AGE.** If the age of the Insured has been misstated, the benefits will be those which the Monthly Deductions would have provided for the correct age.

**AGENT'S AUTHORITY.** None of the provisions of this policy can be waived by any agent or changed except by:

1.  A policy endorsement signed by an officer of the Company; or
2.  A rider signed by an officer of the Company.

**SETTLEMENT.** So far as allowed by law, any proceeds payable under this policy will not be subject to the claims of any payee's creditors or to legal process against any payee. All payments by the Company under this policy are payable at its Home Office.

**NONPARTICIPATING.** This policy will not participate in any surplus distribution by the Company. The Company will not pay dividends on this policy.

**PROJECTION OF BENEFITS AND VALUES.** The Company will provide a projection of Death Benefits and Cash Values upon written request of the Owner and payment of a service fee. The fee payable will be the one then in effect for this service. The projection will be made for a period of at least 20 years. All values will be based on the actual Cash Value, Face Amount and planned periodic premiums at the date of report. One projection of Cash Values and Death Benefits will be based on the minimum interest crediting rate and the maximum risk charge. An alternate projection of values will be based on assumptions as to future interest crediting rates and future risk charges that are deemed reasonable by the Company.

**ANNUAL REPORT.** The Company shall send the Owner at least once a year while the policy is in force a report which shows for the past year the premiums paid, Death Benefits, expense charges, interest credits, risk charges, partial surrenders, indebtedness, Cash Values and Surrender Values. The report will also show the dates when the contract will cease to be in effect if no further premium payments are made. These dates will be based on the minimum guaranteed interest rate and maximum risk charges and then on assumptions as to future interest crediting rates and future risk charges.

**PREMIUM PAYMENT.** The initial premium must be paid before this policy becomes effective. All premiums are payable at the Home Office. A payment may be made to an authorized representative in exchange for a receipt signed by an officer of the Company and countersigned by the representative.

**GRACE PERIOD.** If the Cash Value, less any indebtedness, on a Monthly Anniversary Day (before making the Monthly Deduction) is less than the Monthly Deduction, a Grace Period of 60 days will be allowed for payment of a premium sufficient to cover the Monthly Deduction. Notice of such premium will be mailed to the last known address of the Owner and any assignee of record at least 31 days before the end of the Grace Period. If this premium is not received within the Grace Period, this policy will immediately terminate and have no further value. If the Insured dies during such Grace Period, any overdue Monthly Deductions will be deducted from the amount otherwise payable under this policy.

**REINSTATEMENT.** If the Grace Period expires without sufficient premium being paid, this policy can be reinstated. Reinstatement may be made during the lifetime of the Insured within five years after the expiration of the Grace Period and before the Maturity Date. Such reinstatement is subject to:

1. Payment of a minimum premium sufficient to cover the Monthly Deductions required to keep the policy in force for the next two months;

2. Evidence of insurability satisfactory to the Company provided at the Owner's expense; and
3. Written approval by the Company at its Home Office.

The Cash Value on reinstatement will be the amount provided by the premium paid at reinstatement.

The effective date of a reinstated policy will be the day the Company approves the application for reinstatement and will be shown on an amended Page 3. The Incontestability provision will apply from the effective date of reinstatement. If this policy has been in force for two years during the lifetime of the Insured, it will be contestable only as to statements made in the application for reinstatement.

**PLANNED PERIODIC PREMIUMS AND UNSCHEDULED PREMIUMS.** The planned periodic premium amount and frequency are shown on Page 3. Changes in frequency and increases or decreases in amount of planned periodic premium payments may be made by the Owner. The Company reserves the right to limit the amount of any increase.

Additional premium payments may be made at any time. The Company reserves the right to limit any additional premium payments to a minimum of $500.

The Company reserves the right to return any premium deemed by the Company to cause the Death Benefit to be includable in the gross income of the beneficiary.

**INSURANCE COVERAGE PROVISIONS**

**DEATH BENEFIT.** Subject to the provisions of this policy, the Insured's Death Benefit at any time under this policy will be equal to the greater of:

1. the Face Amount on the date of death, or
2. The applicable percentage of the Cash Value on the date of death. The applicable percentage is 250% if the attained age of the insured is 40 or less at the beginning of the policy year. If the attained age of the Insured is greater than 40 at the beginning of the policy year, the applicable percentage is as shown in the chart below:

| Attained Age | Applicable Percentage | Attained Age | Applicable Percentage | Attained Age | Applicable Percentage |
|---|---|---|---|---|---|
| 41 | 243 | 52 | 171 | 63 | 124 |
| 42 | 236 | 53 | 164 | 64 | 122 |
| 43 | 229 | 54 | 157 | 65 | 120 |
| 44 | 222 | 55 | 150 | 66 | 119 |
| 45 | 215 | 56 | 146 | 67 | 118 |
| 46 | 209 | 57 | 142 | 68 | 117 |
| 47 | 203 | 58 | 138 | 69 | 116 |
| 48 | 197 | 59 | 134 | 70 | 115 |
| 49 | 191 | 60 | 130 | 71 | 113 |
| 50 | 185 | 61 | 128 | 72 | 111 |
| 51 | 178 | 62 | 126 | 73-94 | 110 |

**CHANGES IN COVERAGE.** At any time after the first policy year, the Face Amount of this policy or the amount of any supplementary benefits attached to this policy may be changed by written request from the Owner, subject to the following conditions:

1. Decreases
   a. Any decrease in coverage shall become effective on the Monthly Anniversary Day that coincides with or next follows receipt of the request. Any such decrease shall first reduce insurance with the most recent effective date.
   b. The total Face Amount remaining in force after any requested decrease must be at least as great as the Minimum Face Amount shown on Page 3.

2. Increases
   All requests for an increase in Face Amount or the amount of any supplementary benefits attached to this policy must be applied for on a supplemental application and shall be subject to evidence of insurability satisfactory to the Company which must be provided at the Owner's expense. Any increase approved shall become effective on a Monthly Anniversary Day. The effective date shall be shown on an amended Page 3 issued with respect to such increase.

**BENEFIT AT MATURITY.** The Company will pay the Owner the Cash Value less any indebtedness on the Maturity Date if the Insured is living on that date.

### NONFORFEITURE PROVISIONS

**CASH VALUE.** The Cash Value on the Issue Date shall be the Cash Value provided by the initial net premium.

The net premium is the total premium received in the Company's Home Office since the preceding Monthly Anniversary Day reduced by the Premium Collection Charge shown on Page 3 of the policy.

On each Monthly Anniversary Day while the policy is in force, the Cash Value shall be calculated as (a) plus (b) plus (c) minus (d) minus (e) where:

(a)  is the Cash Value on the preceding Monthly Anniversary Day;
(b)  is the interest credit on (a) as described in the INTEREST CREDITS section;
(c)  is the net premium reduced by the Expense Charge Rate shown on Page 3 of the policy;
(d)  is any Partial Surrender made on the Monthly Anniversary Day; and
(e)  is the Monthly Deduction for the month following the Monthly Anniversary Day.

On any day other than a Monthly Anniversary Day, the Cash Value shall be calculated as (a) plus (c).

**INTEREST CREDITS.** On each Monthly Anniversary Day, an interest crediting rate will be established which will be used to credit interest on all Cash Value not securing a policy loan. This interest crediting rate is equal to the published Six-Month United States Treasury Bill Discount Rate, established as a result of the most recent regularly scheduled auction prior to such Monthly Anniversary Day. If the scheduled auction program is discontinued, the Company reserves the right to substitute an index which in the Company's sole opinion is a comparable index.
However, in no event will the interest crediting rate be less than the minimum guaranteed rate shown on Page 3 of the policy.
The interest credit to be added to the Cash Value will be determined each Monthly Anniversary Day by applying the applicable interest crediting rate to all Cash Value not securing any indebtedness.

The interest crediting rate applicable to the portion of Cash Value securing any policy indebtedness will be the minimum guaranteed rate.

The method of determining the interest crediting rate described above will be used for a period of three years from the Issue Date. After such three year period, the Company has the right to change the method of determining the interest crediting rate. Such method:

1.  will be guaranteed by the Company for the remainder of the lifetime of each policy;
2.  will have the same minimum guaranteed rate shown on Page 3 of the policy; and
3.  will be communicated in writing by the Company to the Owner in advance of the effective date of the change in method.

**MONTHLY DEDUCTION.** The Monthly Deduction for a policy month shall be calculated as the sum of (a) and (b) where:

(a)  is the risk charge (as described below) and the charges for supplementary benefits attached to the policy; and
(b)  is the Increase Charge for any increase in Face Amount. The Increase Charge is shown on Page 3 of the policy and it applies only to the policy month following the Monthly Anniversary Day on which an increase in Face Amount becomes effective.

**RISK CHARGE.** The risk charge for the Insured is determined on a monthly basis. Such charge is calculated as (a) multiplied by the result of (b) minus (c) where:

(a)  is the Risk Charge Rate as described in the Risk Charge Rates section;

(b)  is the Death Benefit at the beginning of the policy month, divided by the sum of one plus the monthly minimum guaranteed interest rate shown on Page 3 of the policy; and

(c)  is the Cash Value at the beginning of the policy month.

**RISK CHARGE RATES.** The monthly Risk Charge Rate is based on the attained age and rating class of the Insured for the initial Face Amount and each increase in Face Amount. If there have been any increases in Face Amount, the Cash Value will first be considered to be a part of the initial Face Amount. If the Cash Value exceeds the initial Face Amount, it will be considered a part of any increases in Face Amount in the order of the increases. If the Death Benefit is greater than the Face Amount, the Risk Charge Rate will be based on the most recent rate class of the Insured.

In any month, at the Company's sole discretion, the Risk Charge Rates can be changed. Any change will be based on the Company's future expectations of mortality; and it will be made on a uniform basis for all insureds of the same class. The Risk Charge Rates cannot be more than the Guaranteed Risk Charge Rates.

**GUARANTEED RISK CHARGE RATES.** The Guaranteed Risk Charge Rates for the Nonsmoker risk class are shown on Page 4. The Guaranteed Risk Charge Rates for the Smoker risk class are equal to the Nonsmoker Guaranteed Risk Charge Rates multiplied by the Smoker multiple extra rating shown on Page 5. These rates apply to standard risks. The Guaranteed monthly Risk Charge Rates will be appropriately adjusted for substandard risks.

**CONTINUATION OF INSURANCE.** In the event Planned Periodic Premium payments are not continued, insurance coverage under the policy and any benefits provided by rider will be continued until the Cash Value, less any indebtedness, is insufficient to cover the Monthly Deduction, as provided in the Grace Period provision. This provision shall not continue the policy beyond the Maturity Date nor continue any rider beyond the date for its termination as provided in the rider. If the policy continues to the Maturity Date, the Cash Value less indebtedness will be payable to the Owner.

**SURRENDER AND SURRENDER VALUE.** This policy may be surrendered on any Monthly Anniversary Day, if it has not been terminated otherwise, upon written request by the Owner to the Company. Upon surrender, all insurance in force under the policy and any additional benefits provided by rider will terminate.

If surrender is requested under this section within 30 days after a policy anniversary, the Surrender Value shall not be less than the Surrender Value on that anniversary, less any policy loans made on or after such anniversary.

The proceeds payable on surrender of the policy shall be the Cash Value on the date of surrender, as described in the Cash Value section (without deducting the risk charge), less the Surrender Charge as shown on Page 3 of the policy and less the amount of any indebtedness. This Surrender Value will be paid in cash or under an elected optional mode of settlement. Payment may be deferred, except to pay premiums on policies or policys with the Company, but not for more than six months after receipt of written request by the Company.

**PARTIAL SURRENDER.** A partial surrender of a policy may be made on any Monthly Anniversary Day by written request of the Owner. A Service Charge as shown on Page 3 of the policy will be made for each partial surrender.

The Cash Value as of the Monthly Anniversary Day on which a partial surrender is made will be reduced by the sum of the amount of the partial surrender and the Service Charge. The Face Amount will be reduced, as of the Monthly Anniversary Day, by the amount surrendered excluding any excess of Cash Value over the Face Amount. Each partial surrender will reduce the Face Amount in the following order:

1. The Face Amount when the policy was issued; then
2. Each increase in Face Amount in order of such increase, starting with the first.

The amount of the partial surrender is limited to the extent that the resulting Cash Value, less indebtedness, is not less than $500. It is also limited to the extent that the resulting Face Amount is not less than the Minimum Face Amount as shown on Page 3 of the policy.

The Company reserves the right to limit the number of partial surrenders in a policy year. Payment may be deferred except to pay premiums on policies or policys with the Company, but for not more than six months after receipt of written request by the Company.

**BASIS OF COMPUTATION.** The interest rate used in the computation of minimum policy values is shown on Page 3 of the policy. The mortality tables used in the computation of minimum policy values are shown on Pages 4 and 5 of the policy.

The Guaranteed Values are not less than the minimum values required by the law of the jurisdiction in which this policy is delivered. Where required, a detailed statement of the method for computing the values and benefits of this policy has been filed with the insurance department of the state or province in which this policy is delivered.

*4500103443493970100058*

LOAN PROVISION

**POLICY LOAN.** A loan will be granted after the first policy year upon the assignment of this policy to the Company as the only security. A loan will be granted as of any Monthly Anniversary Day in the event that enough Cash Value is available. Such assignment must be written and satisfactory to the Company. The Company may defer the making of any loan except to pay premiums on policies with the Company. Such a deferral will not be for more than six months after a request to make a loan is received by the Company.

**LOAN VALUE.** A loan may be made in an amount such that the resulting total indebtedness, plus interest at the rate shown on Page 3, will not exceed the Cash Value as of the date of the policy loan less the Surrender Charge shown on Page 3.

**LOAN INTEREST.** Loan interest will accrue daily at the policy loan interest rate shown on Page 3. Interest will become a part of the indebtedness as and when it

accrues. Such interest will be payable on each policy anniversary and on the date the loan is settled. If the interest is not paid when due, it will then be added to the loan and will bear interest at the same rate.

**LOAN REPAYMENT.** Repayment of a loan may be made in full or in part at any time before this policy terminates for any reason. All funds received will be credited to this policy as premiums unless clearly designated for loan repayment.

Any indebtedness will be deducted from the proceeds payable upon death, on the Maturity Date or upon surrender of this policy.

If at any time the indebtedness equals or exceeds the Cash Value, the Grace Period provision will apply. This policy will not terminate until 31 days after notice has been mailed by the Company to the last known address of the Owner and any assignee of record.

## OPTIONAL MODES OF SETTLEMENT

The Owner, with the right of revocation, or the beneficiary after the Insured's death, in case the Owner has not made an election, may elect by written notice to the Home Office to have any amount payable under this policy paid according to the optional modes of settlement as may be offered by the Company.

POLICY RIDER

## SUPPLEMENTARY BENEFITS PROVISION

### INSURED'S TOTAL DISABILITY BENEFIT

**BENEFITS.** The Company will credit the Monthly Disability Benefit as shown on Page 3 of the policy, as a premium to the policy during the Total Disability of the Insured. The Company must receive due proof of the Total Disability and due proof that it has continued with no interruption for at least six months, subject to the terms and conditions of this Provision and the policy. As of the date of approval of the claim, the Company will credit, as a premium to the policy, an amount equal to the sum of the Monthly Disability Benefits for all Monthly Anniversary Days which have elapsed since the date Total Disability began. On each Monthly Anniversary Day thereafter, the Company will credit the Monthly Disability Benefit as a premium to the policy. However, no benefit will be credited for any month more than one year prior to the date on which due proof of claim is received at the Home Office of the Company.

**DEFINITION OF TOTAL DISABILITY.** Total Disability means:

The incapacity of the Insured, as a result of bodily injury or disease, to engage in an occupation for remuneration or profit. During the first two years of disability, "occupation" will mean the Insured's regular occupation; thereafter it will mean any occupation for which he is, or may be, reasonably fitted by education, training or experience. The irrecoverable loss by the Insured of the following will be deemed Total Disability:

1. the entire sight of both eyes; or
2. the entire use of:
   a. both hands;
   b. both feet; or
   c. one hand and one foot.

**RISKS NOT COVERED.** No benefits will be payable if Total Disability:

1. Commenced prior to the effective date of this Provision;
2. Results from any intentionally self-inflicted injury, while sane or insane;
3. Results from:
   a. any war, whether declared or undeclared;
   b. any act of war; or
   c. any hostile action by a foreign power.

**NOTICE AND PROOF OF CLAIM.** Satisfactory proof of Total Disability must be received by the Company at its Home Office:

1. During the lifetime of the Insured;
2. During the period of Total Disability;
3. Not later than one year after the expiry date of this Provision, as shown on Page 3 of this policy; and
4. Not later than one year after the date the policy lapsed.

Even if proof is not given within the time specified above, the Monthly Disability Benefit will be credited to the policy if proof is received as soon as reasonably possible. As part of any proof, the Company may require medical examinations of the Insured by physicians named by the Company.

**PROOF OF CONTINUANCE OF TOTAL DISABILITY.** Proof of the continuance of Total Disability must be furnished to the Company when requested. As part of any proof, the Company may require medical examinations of the Insured by physicians named by the Company. After Total Disability has continued for two full years, such proof will not be required more than once a year.

**RESUMPTION OF PREMIUM PAYMENTS.** Upon the end of Total Disability or if proof of

F-64875                    W L MIX,                                    Page 1

the continuance of such disability is not furnished when requested, the Monthly Disability Benefit will no longer be credited to the policy and thereafter planned periodic premiums will be payable in accordance with the terms of this policy.

**TERMINATION OF THIS PROVISION.** This Provision will terminate at the earliest of the following dates:

1. The date the policy lapses due to expiry of the Grace Period;
2. The expiry date for this Provision, as shown on Page 3 of the policy; or
3. The date the policy matures or otherwise terminates.

This Provision can be terminated by written request in which event the Company may require this policy to be returned to the Home Office for endorsement.

If the Insured is Totally Disabled on the expiry date, this Provision will not terminate on the expiry date.

**EFFECTIVE DATE.** The effective date of this Provision is the same as the effective date of this policy unless the Provision was added or increased after the effective date of the policy. In such event, the effective date of this Provision is shown on Page 3 of the policy.

**CONSIDERATION.** This Provision is made a part of the policy to which it is attached, in consideration of the application and payment of the monthly charges for this Provision shown on Page 3. The monthly charge is payable at the same time and subject to the same conditions as the Monthly Deductions for the policy. This Provision is a part of this policy. All terms and conditions in the policy apply to this Provision, except as explained above.

**IN WITNESS WHEREOF,** Provident Life and Accident Insurance Company has caused this Provision to be executed at its Home Office in Chattanooga, Tennessee.

**Thomas R. Watjen**
President and Chief Executive Officer

**Susan N. Roth**
Secretary

*4500103443493970100060*

FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY
ADJUSTABLE DEATH BENEFIT PAYABLE PRIOR TO THE MATURITY DATE
FLEXIBLE PREMIUMS PAYABLE AS SHOWN ON PAGE 3
NONPARTICIPATING-NO DIVIDENDS

F-65679                          W L MIX,

## STATEMENT OF POLICY COST AND BENEFIT INFORMATION

Please direct inquiries to:    Life Department,
                                   Provident Life and Accident Insurance Company,
                                   Fountain Square, Chattanooga, TN  37402

Policy No.:                          Age:  43    Risk Class: SMOKER
Owner:  W L MIX                  Current Face Amount:  $15,739
Insured:  W L MIX                Planned Periodic Premium:  $24.25  monthly
Prepared:  04/09/08              Maturity Date:  August 1, 2037
Issue Date:  August 1, 1985

Your coverage consists of a Flexible Premium Adjustable Life Insurance Policy with the following supplementary benefits with monthly charges made until the expiry dates shown:

|  | Monthly<br>Charge | Expiry<br>Date |
|---|---|---|
| Insured's Total Disability<br>Benefit:  $24.25 per month | $1.27 | 08-01-2002 |

Expense Charge Rates—
    1st Policy Year:     35% for Planned Periodic Premiums,
                       and  8% for any additional premiums.
    Thereafter:         3% if paid annually or by payroll deduction
                     and  8% if paid by any other method.

Premium Collection Charge—
                       $ .75 per month if paid annually or by payroll deduction
                       $1.50 per collection if paid by any other method.

Increase Charge—
                       $2.00 per $1000 increase in Face Amount, applies only
                       for the first month of increase.

Surrender Charge—         $25.00 per policy.

Partial Surrender
Service Charge—           $25.00 per Partial Surrender.

Provident Life and Accident Insurance Company
Chattanooga, Tennessee

F-64873                     W L MIX,                   Page 1

**IMPORTANT NOTICE.**

The projected values shown below may change with variations in interest rates, risk charges, premium payment amounts and mode of payment. The information on these pages and the policy should be read very carefully.

The guaranteed values are calculated using an annual interest rate of 4.5% and the guaranteed maximum risk charges from the policy and assume that Planned Periodic Premiums are paid as shown below. The values may vary depending on how premiums are paid, how much is paid, and whether withdrawals of any kind are made. Loans may be made against the surrender value at an annual 8% loan interest charge. Only 4.5% annual interest will be paid on the portion of the surrender value securing a policy loan. Any outstanding policy loan is deducted from the Death Benefit when the Insured dies, from the Cash Value on the Maturity Date, and from the Surrender Value.

The projected values reflect the Company's current rate of risk charges and an annual interest rate as shown below.

During the 30th year, based on the guaranteed values, your policy will lapse unless the premium is increased. Based on the projected values, your policy will lapse during the 35th year, unless the the premium is increased.

|  | Guaranteed Values | | Projected Values @ 4.5% | |
| --- | --- | --- | --- | --- |
|  | 10 Years | 20 Years | 10 Years | 20 Years |
| Surrender Cost Index | $ 9.93 | $ 12.94 | $ 9.06 | $ 11.36 |
| Net Payment Index | $ 17.49 | $ 17.49 | $ 17.49 | $ 17.49 |

The annual Surrender Cost Index and the Net Payment Index based on the guaranteed values are calculated using an annual interest rate of 4.5% and the guaranteed maximum risk charges from the policy. The annual Surrender Cost Index and Net Payment Index based on the projected values are calculated using an annual interest rate of 4.5% and the Company's current risk charge rates.

Cost Indexes of the basic policy do not include any supplementary benefits. Explanations of these indexes are in the Life Insurance Buyers Guide. Your actual cost may increase or decrease depending upon future risk charges, credited interest rates, and the time when surrender occurs.

Provident Life and Accident Insurance Company
Chattanooga, Tennessee

## ILLUSTRATIVE PROJECTION OF BENEFITS AND VALUES

| End of Policy Year | Attained Age | Total Planned Premium | Death Benefit | | Surrender Values | |
|---|---|---|---|---|---|---|
| | | | Guaranteed 4.5% | Projected 4.5% | Guaranteed 4.5% | Projected 4.5% |
| 1 | 44 | $ 291.00 | $ 15,739 | $ 15,739 | $ 59 | $ 69 |
| 2 | 45 | 291.00 | 15,739 | 15,739 | 232 | 252 |
| 3 | 46 | 291.00 | 15,739 | 15,739 | 405 | 437 |
| 4 | 47 | 291.00 | 15,739 | 15,739 | 578 | 624 |
| 5 | 48 | 291.00 | 15,739 | 15,739 | 750 | 812 |
| 6 | 49 | 291.00 | 15,739 | 15,739 | 921 | 1,001 |
| 7 | 50 | 291.00 | 15,739 | 15,739 | 1,090 | 1,190 |
| 8 | 51 | 291.00 | 15,739 | 15,739 | 1,256 | 1,379 |
| 9 | 52 | 291.00 | 15,739 | 15,739 | 1,417 | 1,568 |
| 10 | 53 | 291.00 | 15,739 | 15,739 | 1,572 | 1,754 |
| 11 | 54 | 291.00 | 15,739 | 15,739 | 1,718 | 1,936 |
| 12 | 55 | 291.00 | 15,739 | 15,739 | 1,856 | 2,114 |
| 13 | 56 | 291.00 | 15,739 | 15,739 | 1,982 | 2,287 |
| 14 | 57 | 291.00 | 15,739 | 15,739 | 2,096 | 2,452 |
| 15 | 58 | 291.00 | 15,739 | 15,739 | 2,199 | 2,613 |
| 16 | 59 | 291.00 | 15,739 | 15,739 | 2,288 | 2,769 |
| 17 | 60 | 291.00 | 15,739 | 15,739 | 2,358 | 2,918 |
| 18 | 61 | 291.00 | 15,739 | 15,739 | 2,424 | 3,071 |
| 19 | 62 | 291.00 | 15,739 | 15,739 | 2,470 | 3,216 |
| 20 | 63 | 291.00 | 15,739 | 15,739 | 2,487 | 3,349 |
| 21 | 64 | 291.00 | 15,739 | 15,739 | 2,494 | 3,488 |
| 22 | 65 | 291.00 | 15,739 | 15,739 | 2,436 | 3,581 |
| 23 | 66 | 291.00 | 15,739 | 15,739 | 2,331 | 3,650 |
| 24 | 67 | 291.00 | 15,739 | 15,739 | 2,173 | 3,690 |
| 25 | 68 | 291.00 | 15,739 | 15,739 | 1,955 | 3,701 |
| 27 | 70 | 291.00 | 15,739 | 15,739 | 1,293 | 3,614 |

Provident Life and Accident Insurance Company
Chattanooga, Tennessee

Provident Life and Accident Insurance Company
Chattanooga, Tennessee  37402

CONTRACT SUMMARY

This contract summary is for your protection.  It gives you basic information about the cost and coverage of the insurance being offered.  It should be read carefully.

This contract summary is not a part of the contract. It only describes main provisions of the contract.  The actual provisions of the contract will control.

Flexible Premium Adjustable Life Insurance

The contract is a Flexible Premium Adjustable Life insurance contract.  The Death Benefit is payable if the Insured dies while the policy is in force.  If the policy is in force at the Maturity Date, the Cash Value is payable.

The Death Benefit is the greater of the Face Amount or the applicable percentage of the Cash Value on the date of death.  The applicable percentage will be as shown in the DEATH BENEFIT clause in your contract.

The Face Amount is adjustable and can be increased or decreased any time after the first contract year at the option of the Owner. (Any increase in coverage is subject to evidence of insurability.)

The initial premium is payable on or before delivery of the contract.  After that, planned periodic premiums may be paid.  The planned periodic premiums are flexible and can be changed at any time.  In addition, unscheduled premium payments may be made in amounts of at least $500.  Any unscheduled premium will be treated like planned periodic premiums in the determination of Cash Values.

The Company reserves the right to amend this contract in order to continue qualification as a life insurance contract under the Internal Revenue Code.

Cash Values are accumulated from premiums paid, less expense charges, plus monthly interest credits.  Each month a deduction is made from the Cash Value which covers certain expense charges and the risk charge for the next month's insurance protection. If there is not enough Cash Value to pay the monthly deduction, a 60-day grace period is allowed in which to pay enough premium to provide a sufficient Cash Value to continue to keep the contract in force.  If enough premium is not paid, the policy will lapse and have no further value.

The contract is nonparticipating.  No dividends are payable.

F-65020                        W L MIX,

This guide can show you how to save money when you shop for life insurance.  It helps you to:

Decide how much life insurance you should buy,

Decide what kind of life insurance policy you need, and

Compare the cost of similar life insurance policies.


Prepared by the

National Association of Insurance

Commissioners


Reprinted by

PROVIDENT LIFE AND ACCIDENT

INSURANCE COMPANY

Chattanooga, TN 37402


April, 1988


The National Association of Insurance Commissioners is an association of state insurance regulatory officials.  This association helps the various Insurance Departments to coordinate insurance laws for the benefit of all consumers.  You are urged to use this Guide in making a life insurance purchase.

THIS GUIDE DOES NOT ENDORSE
ANY COMPANY OR POLICY

BUYING LIFE INSURANCE

When you buy life insurance, you want a policy which fits your needs without costing too much.  Your first step is to decide how much you need, how much you can afford to pay and the kind of policy you want.  Then, find out what various companies charge for that kind of policy.  You can find important differences in the cost of life insurance by using the life insurance cost indexes which are described in this guide.  A good life insurance agent or company will be able and willing to help you with each of these shopping steps.

If you are going to make a good choice when you buy life insurance, you need to understand which kinds are available.  If one kind does not seem to fit your needs, ask about the other kinds which are described in this guide.  If you feel that you need more information than is given here, you may want to check with a life insurance agent or company or books on life insurance in your public library.

## CHOOSING THE AMOUNT

One way to decide how much life insurance you need is to figure how much cash and income your dependents would need if you were to die.  You should think of life insurance as a source of cash needed for expenses of final illnesses, paying taxes, mortgages or other debts.  It can also provide income for your family's living expenses, educational costs and other future expenses.  Your new policy should come as close as you can afford to making up the difference between (1) what your dependents would have if you were to die now, and (2) what they would actually need.

## CHOOSING THE RIGHT KIND

All life insurance policies agree to pay an amount of money if you die.  But all policies are not the same.  There are three basic kinds of life insurance.

1. Term insurance

2. Whole life insurance

3. Endowment insurance

Remember, no matter how fancy the policy title or sales presentation might appear, all life insurance policies contain one or more of the three basic kinds.  If you are confused about a policy that sounds complicated, ask the agent or the company if it combines more than one kind of life insurance.  The following is a brief description of the three basic kinds:

### Term Insurance

Term insurance is death protection for a "term" of one or more years.  Death benefits will be paid only if you die within that term of years.  Term insurance generally provides the largest immediate death protection for your premium dollar.

Some term insurance policies are "renewable" for one or more additional terms even if your health has changed.  Each time you renew the policy for a new term, premiums will be higher.  You should check the premiums at older ages and the length of time the policy can be continued.

Some term insurance policy, as we have already seen, gives you the right before the end
of the conversion period, you may trade the term policy for a whole life or endowment
insurance policy even if you are not in good health.  Premiums for the new policy will
be higher than you have been paying for the term insurance.


## Whole Life Insurance

Whole life insurance gives death protection for as long as you live.  The most common
type is called "straight life" or "ordinary life" insurance, for which you pay the
same premiums for as long as you live.  These premiums can be several times higher
than you would pay initially for the same amount of term insurance.  But they are
smaller than the premiums you would eventually pay if you were to keep renewing a term
insurance policy until your later years.

Some whole life policies let you pay premiums for a shorter period such as 20 years
or until age 65.  Premiums for these policies are higher than for ordinary life in-
surance since the premium payments are squeezed into a shorter period.

Although you pay higher premiums to begin with for whole life insurance than for term
insurance, whole life insurance policies develop "cash values" which you may have if
you stop paying premiums.  You can generally either take the cash, or use it to buy
some continuing insurance protection.  Technically speaking, these values are called
"nonforfeiture benefits".  This refers to benefits you do not lose (or "forfeit") when
you stop paying premiums.  The amount of these benefits depends on the kind of policy
you have, its size and how long you have owned it.

A policy with cash value may also be used as collateral for a loan.  If you borrow
from the life insurance company, the rate of interest is shown in your policy.  Any
money which you owe on a policy loan would be deducted from the benefits if you were
to die, or from the cash value if you were to stop paying premiums.


## Endowment Insurance

An endowment insurance policy pays a sum or income to you -- the policyholder -- if
you live to a certain age.  If you were to die before then, the death benefit would
be paid to your beneficiary.  Premiums and cash values for endowment insurance are
higher than for the same amount of whole life insurance.  Thus, endowment insurance
gives you the least amount of death protection for your premium dollar.


## FINDING A LOW COST POLICY

After you have decided which kind of life insurance fits your needs, look for a good
buy.  Your chances of finding a good buy are better if you use two types of index
numbers that have been developed to aid in shopping for life insurance.  One is called
the "Surrender Cost Index" and the other is the "Net Payment Cost Index".  It will
be worth your time to try to understand how these indexes are used; but, in any event,
use them only for comparing the relative cost of similar policies.  LOOK FOR POLICIES
WITH LOW COST INDEX NUMBERS.


## What is Cost?

"Cost" is the difference between what you pay and what you get back.  If you pay a
premium for life insurance and get nothing back, your cost for death protection is

the premiums. If you pay a premium and get something back later on, such as cash value, your cost is smaller than the premium.

The cost of some policies can also be reduced by dividends; these are called "participating" policies. Companies may tell you what their current dividends are, but the size of future dividends is unknown today and cannot be guaranteed. Dividends actually paid are set each year by the company.

Some policies do not pay dividends. These are called "guaranteed cost" or "non-participating" policies. Every feature of a guaranteed cost policy is fixed so that you will know in advance what your future cost will be.

The premiums and cash values of a participating policy are guaranteed, but the dividends are not. Premiums for participating policies are typically higher than for guaranteed cost policies, but the cost to you may be higher or lower, depending on the dividends actually paid.

### What Are Cost Indexes?

In order to compare the cost of policies, you need to look at:

1. Premiums
2. Cash Values
3. Dividends

Cost indexes use one or more of these factors to give you a convenient way to compare relative costs of similar policies. When you compare costs, an adjustment must be made to take into account that money is paid and received at different times. It is not enough to just add up the premiums you will pay and to subtract the cash values and dividends you expect to get back. These indexes take care of the arithmetic for you. Instead of having to add, subtract, multiply and divide many numbers yourself, you just compare the index numbers which you can get from life insurance agents and companies:

1. LIFE INSURANCE SURRENDER COST INDEX – This index is useful if you consider the level of the cash values to be of primary importance to you. It helps you compare costs if, at some future point in time, such as 10 or 20 years, you were to surrender the policy and take its cash value.

2. LIFE INSURANCE NET PAYMENT COST INDEX – This index is useful if your main concern is the benefits that are to be paid at your death, and if the level of cash values is of secondary importance to you. It helps you compare costs at some future point in time, such as 10 or 20 years, if you continue paying premiums on your policy and do not take its cash value.

There is another number called the Equivalent Level Annual Dividend. It shows the part dividends pay in determining the cost index of a participating policy. Adding a policy's Equivalent Level Annual Dividend to its cost allows you to compare total costs of similar policies before deducting dividends. However, if you make any cost comparisons of a participating policy with a non-participating policy, remember that the total cost of the participating policy will be reduced by dividends, but the cost of the non-participating policy will not change.

W L MIX,                                                    Page 4

The most important thing to remember when using cost indexes is that a policy with a small index number is generally a better buy than a comparable policy with a larger index number. The following rules are also important:

(1) Cost comparisons should only be made between similar plans of life insurance. Similar plans are those which provide essentially the same basic benefits and require premium payments for approximately the same period of time. The closer policies are to being identical, the more reliable the cost comparison will be.

(2) Compare index numbers only for the kind of policy, for your age and for the amount you intend to buy. Since no one company offers the lowest cost for all types of insurance at all ages and for all amounts of insurance, it is important that you get the indexes for the actual policy, age and amount which you intend to buy. Just because a "shopper's guide" tells you that one company's policy is a good buy for a particular age and amount, you should not assume that all of that company's policies are equally good buys.

(3) Small differences in index numbers could be offset by other policy features or differences in the quality of service you may expect from the company or its agent. Therefore, when you find small differences in cost indexes, your choice should be based on something other than cost.

(4) In any event, you will need other information on which to base your purchase decision. Be sure you can afford the premiums, and that you understand its cash values, dividends and death benefits. You should also make a judgment on how well the life insurance company or agent will provide service in the future, to you as a policyholder.

(5) These life insurance cost indexes apply to new policies and should not be used to determine whether you should drop a policy you have already owned for awhile, in favor of a new one. If such a replacement is suggested, you should ask for information from the company which issued the old policy before you take action.

# IMPORTANT THINGS TO REMEMBER

## A SUMMARY

The first decision you must make when buying a life insurance policy is choosing a policy whose benefits and premiums most closely meet your needs and ability to pay. Next, find a policy which is also a relatively good buy. If you compare Surrender Cost Indexes and Net Payment Cost Indexes of similar competing policies, your chances of finding a relatively good buy will be better than if you do not shop.

Remember, Look For Policies With Lower Cost Index Numbers.

A good life insurance agent can help you to choose the amount of life insurance and kind of policy you want and will give you cost indexes so that you can make cost comparisons of similar policies.

Don't buy life insurance unless you intend to stick with it. A policy which is a good buy when held for 20 years can be very costly if you quit during the early years of the policy. If you surrender such a policy during the first few years, you may get little or nothing back and much of your premium may have been used for company expenses.

Read your new policy carefully, and ask the agent or the company for an explanation of anything you do not understand. Whatever you decide now, it is important to review your life insurance program every few years to keep up with changes in your income and responsibilities.

PROVIDENT
LIFE AND ACCIDENT
INSURANCE COMPANY
1 FOUNTAIN SQUARE
CHATTANOOGA, TN.  37402

*3000103443493970100050*

111515001   ECC


W L MIX
512 W BITTER SWEET
WASHINGTON        IL 61571

-

W L MIX,

# COMPLAINT

# EXHIBIT C

# PROVIDENT
# LIFE AND ACCIDENT
### INSURANCE COMPANY

**CUSTOMER SERVICE REQUEST FORM
LIFE PAYROLL DEDUCTION**

1 FOUNTAIN SQUARE
CHATTANOOGA, TN 37402-1338

NOV 10 1993

The Policyholder/Owner requests the following change on Policy No. _____ on the life of _____

**1. ■ Name Change of** ☐ Insured   ☐ Owner

From _____   To _____

If change of address, show new address _____

(No./Street)          (City)          (State)          (Zip)

Reason for change:   ☐ Marriage   ☐ Court Order   ☐ Adoption   ☐ Correction   ☐ Divorce

☐ Other _____

**2. Owner's Current Address**
**If New Address, Check Here ■**

512  W.  BITTERSWEET
(No.)          (Street Address)          (Apt. No.)

WASHINGTON          IL          61571
(City)          (State)          (Zip)

**3. ■ Policy Assignment Release**

The undersigned (No. 11) assignee releases all rights, title, and interest in this policy.

**4. ■ Surrender of Policy**

For the cash surrender value, the undersigned surrenders the Policy and all claims thereunder and directs that a check be forwarded for the proceeds after deduction of indebtedness, if any. The undersigned hereby declares that no bankruptcy proceedings are now pending. Please return your policy to the Home Office.

**5. ■ Ownership Change**

Change the Owner to:

Name _____

Address _____

From the effective date hereof, the Owner designated above alone may exercise every privilege and enjoy every benefit granted under this policy to the Owner except that, if there is an irrevocably designated beneficiary, the Owner may exercise his/her rights only with the consent of such beneficiary. The rights of any deceased beneficiary shall vest in the Owner.

**Please note that completion of this section has no effect on the beneficiary designation in effect. If a change of beneficiary is desired, complete section 8.**

**6. ■ Policy Loan Agreement**

☐ MAXIMUM AMOUNT AVAILABLE, ☐ $ _____ CASH, OR FULL AMOUNT AVAILABLE, IF LESS. In consideration of the advance by Provident of $ _____ as a loan, all right, title, and interest in the Policy is hereby assigned to Provident as sole security for the repayment of the loan with interest, subject to the provisions of the Policy which are incorporated and made a part hereof. The undersigned declares that no bankruptcy proceedings are now pending.

**7. ■ Request For Duplicate Policy or Policy Summary**   This policy was lost or destroyed.

**(See reverse side)**

L-53490 (Rev. 10-91)

PLACL00028

**8. ■ Beneficiary Change(s)**    Full given name, address and relationship of each beneficiary must be given. Unless otherwise specified, proceeds are to be paid in equal shares to the surviving beneficiaries, if more than one.

Primary    ANGELA LYNNE MANTOVANI      Relationship Percent To Insured

512 W. BITTERSWEET    WASH    IL   61571   100%   WIFE

Name      No./Street      City    State   Zip    %

Name      No./Street      City    State   Zip

Contingent    JILL LORENE MIX      Relationship Percent To Insured

110 W. COLINE    MT STERLING    IL   61571   100%   DAUGHTER

Name      No./Street      City    State   Zip    %

Name      No./Street      City    State   Zip

**9. ■ Request For Change Of Policy**    I hereby request and direct Provident Life and Accident, Chattanooga, TN 37402, to change Policy No. _____ issued by the said Company on the life of W.L. MIX (Insured) in accordance with the "Additional Particulars" given below. Please return policy to the Home Office

| FROM (OLD POLICY) | TO (NEW POLICY) |
|---|---|
| Plan _____ | Plan _____ |
| Premium $ _____ | Premium $ _____ |
| Amount $ _____ | Amount $ _____ |
| Benefits _____ | Benefits _____ |
| Riders _____ | Riders _____ |

Are you actively at work on a full time basis and at full pay? ☐ Yes ☐ No

**10. ■ Additional Particulars**

PLACL00029

**11. ■ Signatures**    Provident Life and Accident is hereby authorized to amend this request to correct obvious errors or omissions.

Wm. L. Mix            _Angie Mantovani_    11-5-93
Owner Signature            Witness Signature    Date

Assignee Signature            Witness Signature    Date

THIS SECTION FOR PROVIDENT HOME OFFICE USE ONLY

**Acknowledged**

By _____      Date   NOV 2 3 1993

Claimant Name: William I. Mix    Claim #: 3419680

# COMPLAINT

# EXHIBIT D

Fax to 7521809 (FISTD800) received at 11/12/2007 11:36:14 from (Unavailable).                    p.2

Nov 12 07 10:37a

IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT OF ILLINOIS
TAZEWELL COUNTY

**FILED**

IN RE:  THE MARRIAGE OF      )
                              )                    MAY 2 5 2006
WILLIAM L. MIX,              )
                              )                    *[signature]*
            Plaintiff,        )                    TAZEWELL COUNTY CIRCUIT CLERK
                              )                    TENTH JUDICIAL CIRCUIT OF ILLINOIS
    and                       )   NO:  04 D 517
                              )
ANGELA L. MANTOVANI,         )
                              )
            Defendant.        )

## JUDGMENT OF DISSOLUTION OF MARRIAGE

This cause coming on to be heard upon a verified Petition
for Dissolution of Marriage, heretofore filed in the above
captioned cause of action by the Plaintiff, WILLIAM L. MIX
(hereinafter referred to as the "Plaintiff"); and the Defendant,
ANGELA L. MANTOVANI (hereinafter referred to as the "Defendant"),
having heretofore executed and filed a Written Response to
Petition for Dissolution of Marriage, which said Response has
been examined by this Court; and this Court having heard the oral
testimony of the Plaintiff, sworn and examined in open Court; and
this Court having made a finding that grounds exist pursuant to
order entered herein on January 7, 2005; and this Court having
heard the arguments and statements of counsel representing the
Plaintiff and Defendant; and this Court having now been fully
advised in the premises hereof, this Court does hereby find as
follows:

PLACL00082

Fax to 7521809 (FISTD800) Case 1:08-cv-00220 Document (Unavailable). Filed 06/04/2008 Page 45 of 71
Page 3 of 8 pages (C)

Nov 12 07 10:37a
p.3

1. The Plaintiff is now and for more than ninety (90) days continuously and immediately preceding the filing of the Petition for Dissolution of Marriage has been a resident of the State of Illinois.

2. The Plaintiff, age 64 and social security number 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, and the Defendant, age 43, and social security number 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, are now husband and wife, having been lawfully married on the 17th day of June, 1989, in Washington, Illinois, and said marriage was registered in Tazewell County, Illinois.

3. No children were born to the Plaintiff and the Defendant during the course of and as a result of their marriage and no children were adopted by the Plaintiff and the Defendant. The Defendant is not now pregnant.

4. The Plaintiff and the Defendant cohabited and lived together as husband and wife in the marital residence located at 512 W. Bittersweet, Washington, Illinois, until September 23, 2004. The Plaintiff and Defendant have not cohabited and lived together as husband and wife since September 23, 2004, and the parties had ceased to cohabit prior thereto.

5. The Defendant is guilty of extreme and repeated mental cruelty without any cause or provocation on the part of the Plaintiff.

6. The Plaintiff is retired and the Defendant is employed by Burger Barge.

PLACL00083

2

*Claimant Name: William L Mix*        *Claim #: 3419680*

Fax to 7521809 (FISTD800) received a 81/17/2007 12:36:14 from (Unavailable).    Filed 06/04/2008    Page 46 of 71    Page 4 of 8 pages (C)

Nov 12 07 10:37a                                                                                                                    p.4

7.    The Plaintiff and the Defendant, by their joint efforts, frugalities and contributions, have acquired certain joint property as follows:  household furniture, furnishings, linens, dishes, silverware and other personal property used in connection with the aforesaid marital residence.

8.    The Plaintiff and the Defendant own in their own names certain property, now in their possessions, which they have acquired by their own efforts and to which the other has contributed nothing.

9.    Neither party is a member of the armed services.

10.    The parties hereby agree that they are fully aware of all assets owned by the parties hereto and this agreement is predicated upon full disclosure of all marital assets by both parties hereto.  The parties have agreed to a full settlement of this matter, and the Court has approved said settlement.  The parties have agreed and the Court does find that all modifications are precluded.  The Court finds that this agreement is not unconscionable.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED BY THIS COURT AS FOLLOWS:

A.    The marriage between the Plaintiff and the Defendant be and the same is hereby dissolved and a Judgment of Dissolution of Marriage is hereby granted to both parties, their marital status is voided and the parties are freed from the obligations thereof, in accordance with the statute in such case made and provided.

PLACL00084

3

Fax to 7521809 (FISTD800) Case ed a 08-cv-00922 26:14 Document (Unreadable). Filed 06/04/2008 Page 47 of 71 Page 5 of 8 pages (C)

Nov 12 07 10:38a                                                                                    p.5

B.    Plaintiff is awarded sole and exclusive ownership and possession of his non-marital residence and the Defendant shall immediately execute a quit claim deed transferring any and all interest she may have in said residence to the Plaintiff. Plaintiff shall pay Defendant the sum of $60,000.00 as and for her interest in said residence and said sum shall be paid within sixty days of the entry of this Judgment.  Plaintiff shall pay all sums due on the marital residence and shall hold the Defendant harmless and indemnified therefrom.

C.    Plaintiff has an interest in a defined benefit plan at Cilco, which pays him approximately $1,700.00 per month. Defendant is awarded a percentage of that pension benefit pursuant to the Hunt Formula.  Her percentage shall be the total number of months married while the Plaintiff was employed at Cilco over the total number of months the husband was employed at Cilco, divided by two.  A qualified domestic relations order shall be entered to effectuate that transfer.  Each party is awarded any other retirement and/or pension plans, 401(k) plans, IRA's, or any other retirement plans in his or her own name, free and clear of any interest of the other.

D.    Plaintiff shall pay maintenance to the Defendant in the amount of $350.00 for a period of twenty-four months.  The parties have agreed that this provision is non-modifiable pursuant to Section 502(f) of the Illinois Marriage and Dissolution of Marriage Act and the amount and duration of the

PLACL00085

4

Fax to 7521809 (FISTD800) Case 1 a08:02/2008 22:36:14 Doc (Unavailable).   Filed 06/04/2008   Page 48 of 71   Page 6 of 8 pages (C)

Nov 12 07 10:38a                                                                                          p.6

maintenance payment cannot be shortened, extended, increased or decreased.   The maintenance shall be terminated only upon the occurrence of the Plaintiff's death, the Defendant's death, or the Defendant's re-marriage, or the cohabitation by Defendant with a third party male on a full time regular basis.

E.   Attached hereto and incorporated herein as the Court's Exhibit 1 is a list of the personal property division.   The Defendant is awarded the property on the left side of each page that is not lined-out.   The property that is lined out shall stay with the person who presently has possession of that property. Defendant is to remove her property by June 27, 2006 and the Plaintiff shall allow Defendant to use the trailer to move her property.   Other than as cited herein, each party is awarded the personal property in his or her possession, free and clear of any interest of the other.

F.   The Plaintiff is awarded sole and exclusive possession and title to the Chrysler PT Cruiser, free and clear of any interest of the Defendant.   The Plaintiff shall pay all sums due thereon and shall hold the Defendant harmless and indemnified therefrom.

G.   The Defendant is awarded sole and exclusive possession and title to the Jeep Grand Cherokee, free and clear of any interest of the Plaintiff.   The Defendant shall pay all sums due thereon and shall hold the Plaintiff harmless and indemnified therefrom.

PLACL00086

5

Fax to 7521809 (FISTD800)   Page 1 of 1/2/2022 76:14 Doc (Unreadable).

Nov 12 07 10:38a                p.7

H. Each party is hereby awarded their own individual checking and savings accounts presently in existence, free and clear of any interest of the other, as well as any other financial accounts in their own names.

I. The Plaintiff shall pay one-half of the attorney's fees incurred by the Defendant while she was represented by Kirk Bode, but said payment shall not exceed $2,000.00. Other than the amount paid to Kirk Bode by Plaintiff, each party shall pay his or her own attorney's fees and costs incurred.

J. The issue of the allocation of life insurance policies and any cash value thereof is reserved.

K. The parties acknowledge there are no marital debts outstanding at this time, other than as listed herein. Any debt not listed specifically herein shall be paid by the party who incurred said debt, and that party shall hold the other harmless and indemnified from any liability due thereon.

L. Both parties shall terminate any joint credit accounts that have the other party listed as a joint obligor. The parties shall transfer any credit accounts into their individual names and shall hold the other party harmless and indemnify the other from any balances due on said credit accounts.

M. Each party shall execute all title assignments, documents or instruments necessary to effect the transfers cited in this Judgment of Dissolution of Marriage and should either fail or refuse to execute such assignments, documents or

PLACL00087

6

Fax to 7521809 (FISTD800) Created on 03/01/2008 22:76:14 Docu (Unavailable).    Filed 06/04/2008    Page 50 of 71 Page 8 of 8 pages (C)

Nov 12 07 10:38a                                                                                         p.8

instruments within forty-five (45) days of this Judgment of Dissolution of Marriage, an Associate Judge of the Tenth Judicial Circuit is hereby authorized and directed to execute such assignments, documents or instruments on behalf of the party in question.

N.  Other than the aforementioned provisions of this Judgment of Dissolution of Marriage, each of the parties hereto is hereby barred and foreclosed from making any and all other claims against the other, whether for maintenance, homestead rights, rights of inheritance, or any and all property rights, whether real, personal or mixed, which either of them may now have or may hereinafter acquire in the future, arising out of the marital relationship heretofore existing between them.  Both parties hereby state they are not now seeking maintenance and hereby state they shall never seek maintenance, other than as previously cited in this Judgment of Dissolution of Marriage.

/S/ J. MAHER
_____
JUDGE

This JUDGMENT OF DISSOLUTION OF MARRIAGE is entered this 2-5 day of MAY, 2006.

Entry of the foregoing Judgment of Dissolution of Marriage, including all property matters, hereby consented to.

_____
WILLIAM L. MIX, Plaintiff

_____
Attorney for Plaintiff

_____
ANGELA L. MANTOVANI, Defendant

_____
Attorney for Defendant

7

PLACL00088

# COMPLAINT

# EXHIBIT E

Case 1:08-cv-03227 Document 1 Filed 06/04/2008 Page 52 of 71 pages (C)

Fax to 7521809 (FISTD800) received at 05/16/2007 21:20:04 from (8662998176).

05/16/2007 20:23 FAX 8662998176    GARNER FFDA                              ⓐ011

REGISTRATION DISTRICT NO. **72.0**

REGISTERED NUMBER **986**

STATE OF ILLINOIS

**MEDICAL CERTIFICATE OF DEATH**

STATE FILE NUMBER

Type or Print in PERMANENT INK
See Funeral Directors, Hospital, or Physician Handbook for INSTRUCTIONS

1. DECEASED–NAME FIRST MIDDLE LAST: **William Lowell Mix**
SEX: 2. **Male**
DATE OF DEATH (MONTH, DAY, YEAR): 3. **May 8, 2007**

4. COUNTY OF DEATH: **Peoria**
5a. AGE–LAST BIRTHDAY (YRS): **65**
5b. UNDER 1 YEAR MOS DAYS
5c. UNDER 1 DAY HOURS MIN
5d. DATE OF BIRTH (MONTH, DAY, YEAR): **April 23, 1942**

6a. CITY, TOWN, TWP, OR ROAD DISTRICT NUMBER: **Peoria**
6b. HOSPITAL OR OTHER INSTITUTION–NAME (IF NOT IN EITHER, GIVE STREET AND NUMBER): **OSF St. Francis Medical Center**
6c. IF HOSP. OR INST. INDICATE D.O.A., OP/EMER. RM, INPATIENT (SPECIFY): **Inpatient**

7. BIRTHPLACE (CITY AND STATE OR FOREIGN COUNTRY): **Cisne, Illinois**
8a. MARRIED, NEVER MARRIED, WIDOWED, DIVORCED (SPECIFY): **Divorced**
8b. NAME OF SURVIVING SPOUSE (MAIDEN NAME, IF WIFE):
9. WAS DECEASED EVER IN ARMED FORCES? (YES/NO): **Yes**

10. SOCIAL SECURITY NUMBER:
11a. USUAL OCCUPATION: **System Engineer**
11b. KIND OF BUSINESS OR INDUSTRY: **Electric Utility**
12. EDUCATION (SPECIFY ONLY HIGHEST GRADE COMPLETED) Elementary/Secondary (0-12) College (1-4 or 5+): **4**

13a. RESIDENCE (STREET AND NUMBER): **512 Bittersweet**
13b. CITY, TOWN, TWP, OR ROAD DISTRICT NO.: **Washington Township**
13g. INSIDE CITY (YES/NO): **No**
13h. COUNTY: **Tazewell**

13c. STATE: **IL**
13f. ZIP CODE: **61571**
14a. RACE (WHITE, BLACK, AMERICAN INDIAN, etc.) (SPECIFY): **White**
14b. OF HISPANIC ORIGIN? (SPECIFY NO OR YES—YES, SPECIFY CUBAN, MEXICAN, PUERTO RICAN, etc.) ☒ NO ☐ YES SPECIFY:

15. FATHER–NAME FIRST MIDDLE LAST: **Charlie Mix**
16. MOTHER–NAME FIRST MIDDLE (MAIDEN) LAST: **Rosamond Anderson**

17a. INFORMANT'S NAME (TYPE OR PRINT): **Jill Garner**
17b. RELATIONSHIP: **Daughter**
17c. MAILING ADDRESS (STREET AND NO. OR R.F.D., CITY OR TOWN, STATE, ZIP): **22 Corvette Lane Carthage, TN 37030**

18. PART I. Enter the diseases, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line.
APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH

Immediate Cause (Final disease or condition resulting in death) (a) **anoxic encephalopathy** → **2 d**

CONDITIONS, IF ANY WHICH GIVE RISE TO IMMEDIATE CAUSE (a) STATING THE UNDERLYING CAUSE LAST.
DUE TO, OR AS A CONSEQUENCE OF (b) **out of hospital cardiac arrest** **2 d**
DUE TO, OR AS A CONSEQUENCE OF (c) **acute inferior Myocardial infarct** **2 d**

PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in PART I.
19a. AUTOPSY (YES/NO): **No**
19b. WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? (YES/NO): **No**

20a. DATE OF OPERATION, IF ANY:
20b. MAJOR FINDINGS OF OPERATION:
20c. IF FEMALE, WAS THERE A PREGNANCY IN PAST THREE MONTHS? YES ☐ NO ☐

21a. I (DID)(DID NOT) ATTEND THE DECEASED AND LAST SAW HIM/HER ALIVE ON (MONTH, DAY, YEAR): **5-8-07**
21b. WAS CORONER OR MEDICAL EXAMINER NOTIFIED? (YES/NO): **No**
21c. HOUR OF DEATH: **7:36 PM**

22a. SIGNATURE ▶
22b. DATE SIGNED (MONTH, DAY, YEAR): **5-9-07**

22c. NAME AND ADDRESS OF CERTIFIER (TYPE OR PRINT): **5405 N Knoxville Peoria IL**
22d. ILLINOIS LICENSE NUMBER: **036070200**

23. NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (TYPE OR PRINT):
NOTE: IF AN INJURY WAS INVOLVED IN THIS DEATH THE CORONER OR MEDICAL EXAMINER MUST BE NOTIFIED.

24a. BURIAL, CREMATION, REMOVAL (SPECIFY): **Cremation**
24b. CEMETERY OR CREMATORY–NAME: **Heartland Cremation Services**
24c. LOCATION CITY OR TOWN STATE: **Metamora, IL**
24d. DATE (MONTH, DAY, YEAR): **May 12, 2007**

25a. FUNERAL HOME NAME STREET AND NUMBER OR R.F.D.: **Mason-White Funeral Home    20 Valley Forge Road**
CITY OR TOWN STATE ZIP: **Washington, il 61571**

26a. FUNERAL DIRECTOR'S SIGNATURE
25c. FUNERAL DIRECTOR'S ILLINOIS LICENSE NUMBER: **034-015285**

26a. LOCAL REGISTRAR'S SIGNATURE
26b. DATE FILED BY LOCAL REGISTRAR (MONTH, DAY, YEAR): **May 9, 2007**

VR300 (Rev. 5/89)    Illinois Department of Public Health–Division of Vital Records    BASED ON 1989 U.S. STANDARD CERTIFICATE

**CERTIFIED COPY OF VITAL RECORDS**

STATE OF ILLINOIS } ss
COUNTY OF PEORIA }

This is to certify that this is a true and correct copy of the official record filed with the Illinois Department of Public Health.

DATE ISSUED:

MAY 0 9 2007

*Andrew L. Parker, MS, RN.*



PLAC100022

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# COMPLAINT

# EXHIBIT F

Page 1 of 10

May 16, 2007

UnumProvident
Provident Life & Accident Insurance Company
The Benefits Center
P.O. Box 100158
Columbia, SC 29202-3158

Dear Sir/Madam,

Attached please find a claim on my Father's insurance policy (policy # 344349397-01) for myself and my two sisters, Jan Mix and Joy Mix. Also attached are documents relevant to my Father's divorce from my stepmother, Angela Mantovani.

I am unclear if Ms. Mantovani is a beneficiary on this policy. **However, my Father was very clear he did not wish to have Angela Mantovani carry any life insurance on him or benefit from his death.** I believe this may impact her status as a potential beneficiary. I have enclosed a copy of the filed Judgement of Dissolution of Marriage, the page of the decree which discusses life insurance policies, and a letter from his attorney to her counsel dated 5/15/06 which clarifies his position.

If you need further information, please feel free to contact me at (615) 735-2328 or (615) 681-7748.

Thank you for you attention to this matter.

Jill Garner

Jill Garner

PLACL00012

05/16/2007 20:20 FAX 8862998176          GARNER FFDA                              002

Wm Mix - 2 of 10



# PROOF OF DEATH

Provident Life and Accident Insurance Company
The Benefits Center, P.O. Box 100158,
Columbia, SC 29202-3158

## INSTRUCTIONS

**IMPORTANT: Before completing this form, read the instructions, fraud statements, sign and date on reverse side.**
**For Toll Free Assistance Call: 1-800-635-5597   Fax: 1-800-447-2498**

1. Beneficiary's Statement must be made by the person to whom the insurance is payable. If there is more than one beneficiary, all may join in one statement, or a separate Proof of Death form can be submitted for each beneficiary.
2. When the insurance is payable to a named beneficiary of legal age, the statement must be made by such beneficiary.
3. Include a copy of a certified death certificate.
4. If any named beneficiary predeceases the Insured, it will be necessary to submit a copy of a certified death certificate for each such beneficiary.
5. Please sign at bottom of back page.

## BENEFICIARY'S STATEMENT

Deceased's Name __William L. Mix__   Date of Birth __04/23/1942__   Social Security Number ____   Sex ☑M ☐F

No./Street __512 W. Bittersweet__   City __Washington__   State __IL__   Zip Code __61571__

Policy No. __344349397 - 01__   Amount of Insurance $____

Date of Death __05/08/2007__   Place of Death __OSF - St. Francis Medical Center, Peoria IL__

Cause of Death __anoxic encephalopathy, out of hospital cardiac arrest, acute inferior myocardial enfarct__   Date deceased first consulted physician for last illness __05/06/2007__

Name and address of all physicians who attended Deceased during last illness and during three years prior:

| NAME | ADDRESS/TELEPHONE NUMBER | DATES OF ATTENDANCE | DISEASE OR CONDITION |
|---|---|---|---|
| Dr. Craig Kurtz | OSF 530 NE Glen Oak Ave Peoria IL (309) 655-2000 | 5/6/07 - 5/8/07 | cardiac arrest |
| Methodist Medical Group | Peoria IL (309) 674-2273 | 2/9/06, 3/4/06, 3/8/06 | doctor visits, labs |
| Dr. William Harris | Peoria Family Dental 6808 N Knoxville Peoria IL (309) 691-9557 | 3/06 | routine dental cleaning |

If death due to injury, please describe accident in detail and attach a copy of the police report ____

__N/A__

Date of Injury __ __/__ __/__ __ __ __

## REQUEST FOR TAXPAYER'S IDENTIFICATION NUMBER (IN LIEU OF FEDERAL FORM W 9)

State your relationship to the Deceased __Daughter - Jill Garner__

Your Social Security No. [____] [____]   or Employer Identification No. [____]

**Certification** Under the penalties of perjury, I certify that this is my correct Taxpayer Identification Number, and that I am not subject to backup withholding. If you are subject to backup withholding, then place a check in the box. ☐

Signature of Beneficiary __Jill Garner__   Date __ __/__ __/__ __ __

No./Street __22 Corvette Lane__   City __Carthage__   State __TN__   Zip Code __37030__

Telephone No. (__615__) __735-2328__   Age __38__

1047-02 (11/06)                          (continued on back)

PLACL00013

05/16/2007 20:20 FAX 8662998176      GARNER FFDA      图003

Wm Mix
3 of 10

## FRAUD WARNING STATEMENTS

### CLAIM FRAUD WARNING STATEMENTS

For your protection, the laws of several states, including Alaska, Arizona, Arkansas, Delaware, Idaho, Indiana, Kentucky, Louisiana, Minnesota, New Hampshire, Ohio and Oklahoma, and others require the following statement to appear:

**Fraud Warning**
Any person who knowingly, and with intent to injure, defraud, or deceive an insurance company, files a statement of claim containing any false, incomplete, or misleading information is guilty of insurance fraud, which is a felony.

**Fraud Warning for California Residents**
For your protection, California law requires the following to appear:
Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Fraud Warning for Colorado Residents**
It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Fraud Warning for District of Columbia, Maine and Virginia Residents**
It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purposes of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Fraud Warning for Florida Residents**
Any person who knowingly and with intent to injure, defraud or deceive any insurance company, files a statement of claim or an application containing false, incomplete or misleading information is guilty of a felony of the third degree.

**Fraud Statement for New Jersey, New Mexico and Pennsylvania Residents**
Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Fraud Statement for New York Residents**
Any person who knowingly and with the intent to defraud any insurance company or other person files an application for insurance or statement of claim containing materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Fraud Warning for Tennessee Residents**
It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purposes of defrauding the company. Penalties may include imprisonment, fines and denial of insurance benefits.

## AUTHORIZATION

I authorize any doctor, hospital, practitioner, pharmacist, clinic, other medical facility, or provider of health care, banking or financial institution, insurer or reinsurer, consumer reporting agency, governmental agency, including the Social Security Administration, Medical Information Bureau, Employers and other persons or institutions; to provide UnumProvident Corporation and its representatives data or records you may have regarding the employment, medical history and treatment (including records pertaining to psychiatric, drug or alcohol use history, and but not limited to, information regarding HIV status and test results) and income of the deceased.

I understand that any information pursuant to this authorization will be used to evaluate the claim and may be transferred to any agency, insurance support organization or person employed by UnumProvident Corporation, to assist with this purpose. This authorization is valid during the pendency of the claim. I understand I have the right to request a copy of this authorization and that a copy of this authorization will be sent to me if requested. A photostatic copy of this form will be as valid as the original.

_____Jill Garner_____             5.16.07
Beneficiary/Authorized Person's Signature         Date Signed

1047-02 (11/06)

PLACL00014

Claimant Name: William L Mix      Claim #: 3419680

05/16/2007 20:21 FAX 8662998176          GARNER FFDA                          Ø004

Wm Mix  4 of 10



**PROOF OF DEATH**

Provident Life and Accident Insurance Company
The Benefits Center, P.O. Box 100158,
Columbia, SC 29202-3158

**INSTRUCTIONS**

**IMPORTANT: Before completing this form, read the instructions, fraud statements, sign and date on reverse side.
For Toll Free Assistance Call: 1-800-635-5597    Fax: 1-800-447-2498**

1. Beneficiary's Statement must be made by the person to whom the insurance is payable. If there is more than one beneficiary, all may join in one statement, or a separate Proof of Death form can be submitted for each beneficiary.
2. When the insurance is payable to a named beneficiary of legal age, the statement must be made by such beneficiary.
3. Include a copy of a certified death certificate.
4. If any named beneficiary predeceases the insured, it will be necessary to submit a copy of a certified death certificate for each such beneficiary.
5. Please sign at bottom of back page.

**ATTENDING PHYSICIAN'S STATEMENT**

Deceased's Name __William L. Mix__    Date of Birth __04/23/1942__    Social Security Number _____    Sex ☑M ☐F

No./Street __512 W. Bittersweet__    City __Washington__    State __IL__    Zip Code __61571__

Policy No. __344349397-01__    Amount of Insurance $ _____

Date of Death __05/08/2007__    Place of Death __OSF-St. Francis Medical Center, Peoria IL__

Cause of Death _____    Date deceased first consulted physician for last illness __/__/__

Name and address of all physicians who attended Deceased during last illness and during three years prior:

| NAME | ADDRESS/TELEPHONE NUMBER | DATES OF ATTENDANCE | DISEASE OR CONDITION |
|---|---|---|---|
| SEE Beneficiary Statement (previously in fax | Completed) by Jill Garner | | |

If death due to injury, please describe accident in detail and attach a copy of the police report _____

_____

_____

Date of Injury __/__/__

**BENEFICIARY'S STATEMENT**

State your relationship to the Deceased __Jan A. Mix, daughter__

Your Social Security No. _____    or Employer Identification No. _____

Certification Under the penalties of perjury, I certify that this is my correct Taxpayer Identification Number, and that I am not subject to backup withholding. If you are subject to backup withholding, then place a check in the box. ☐

Signature of Beneficiary _____    Date __05/16/2007__

No./Street __192 Virginia__    City __Dyess AFB__    State __TX__    Zip Code __79607__

Telephone No. __(325) 697-9901__    Age __38__

1047-88 (11/02)                    (continued on back)

05/16/2007  20:21 FAX 8662998176                    GARNER FFDA                                    ☑ 005

Wm Mix  5 of 10

### CLAIM FRAUD WARNING STATEMENTS

For your protection, the laws of several states, including Alaska, Arizona, Arkansas, Delaware, Idaho, Indiana, Kentucky, Louisiana, Minnesota, New Hampshire, Ohio and Oklahoma, and others require the following statement to appear:

**Fraud Warning**

Any person who knowingly, and with intent to injure, defraud, or deceive an insurance company, files a statement of claim containing any false, incomplete, or misleading information is guilty of insurance fraud, which is a felony.

**Fraud Warning for California Residents**

For your protection, California law requires the following to appear:

Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Fraud Warning for Colorado Residents**

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Fraud Warning for District of Columbia, Maine and Virginia Residents**

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purposes of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Fraud Warning for Florida Residents**

Any person who knowingly and with intent to injure, defraud or deceive any insurance company, files a statement of claim or an application containing false, incomplete or misleading information is guilty of a felony of the third degree.

**Fraud Statement for New Jersey, New Mexico and Pennsylvania Residents**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Fraud Statement for New York Residents**

Any person who knowingly and with the intent to defraud any insurance company or other person files an application for insurance or statement of claim containing materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Fraud Warning for Tennessee Residents**

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purposes of defrauding the company. Penalties may include imprisonment, fines and denial of insurance benefits.

## AUTHORIZATION

I authorize any doctor, hospital, practitioner, pharmacist, clinic, other medical facility, or provider of health care, banking or financial institution, insurer or reinsurer, consumer reporting agency, governmental agency, including the Social Security Administration, Medical Information Bureau, Employers and other persons or institutions; to provide UnumProvident Corporation and its representatives data or records you may have regarding the employment, medical history and treatment (including records pertaining to psychiatric, drug or alcohol use history, and but not limited to, information regarding HIV status and test results) and income of the deceased.

I understand that any information pursuant to this authorization will be used to evaluate the claim and may be transferred to any agency, insurance support organization or person employed by UnumProvident Corporation, to assist with this purpose. This authorization is valid during the pendency of the claim. I understand I have the right to request a copy of this authorization and that a copy of this authorization will be sent to me if requested. A photostatic copy of this form will be as valid as the original.

_____                    05-16-2007
Beneficiary/Authorized Person's Signature                Date Signed

1047-02 (11/02)

PLACL00016

Claimant Name:  William L Mix        Claim #:  3419680

Fax to 7521809 (FISTD800) received at 05/16/2007 21:20:04 from (8662998176).    Case 1:08-cv-03227    Document 1    Filed 06/04/2008    Page 59 of 71    Page 6 of 11 pages (C)

05/16/2007 20:22 FAX 8662998176                        GARNER FFDA                                      ☑006

Wm Mix 6 of 10



## PROOF OF DEATH

Provident Life and Accident Insurance Company
The Benefits Center, P.O. Box 100158,
Columbia, SC 29202-3158

### INSTRUCTIONS

**IMPORTANT: Before completing this form, read the instructions, fraud statements, sign and date on reverse side.
For Toll Free Assistance Call: 1-800-635-5597    Fax: 1-800-447-2498**

1. Beneficiary's Statement must be made by the person to whom the insurance is payable. If there is more than one beneficiary, all may join in one statement, or a separate Proof of Death form can be submitted for each beneficiary.
2. When the insurance is payable to a named beneficiary of legal age, the statement must be made by such beneficiary.
3. Include a copy of a certified death certificate.
4. If any named beneficiary predeceases the insured, it will be necessary to submit a copy of a certified death certificate for each such beneficiary.
5. Please sign at bottom of back page.

### BENEFICIARY'S STATEMENT

Deceased's Name __William L. Mix__    Date of Birth __04/23/1942__    Social Security Number _____    Sex ☑M ☐F

No./Street __512 W. Bittersweet__    City __Washington__    State __IL__    Zip Code __61571__

Policy No. __344349397-DI__    Amount of Insurance $_____

Date of Death __05/08/2007__    Place of Death __OSF - St. Francis Medical Center, Peoria, IL__

Cause of Death _____    Date deceased first consulted physician for last illness __/__/__

Name and address of all physicians who attended Deceased during last illness and during three years prior:

| NAME | ADDRESS/TELEPHONE NUMBER | DATES OF ATTENDANCE | DISEASE OR CONDITION |
|---|---|---|---|
| SEE Beneficiary statement (previous) Completed by Jill Garner in fax | | | |

If death due to injury, please describe accident in detail and attach a copy of the police report _____

_____

_____

_____

Date of Injury __/__/_____

### REQUEST FOR TAXPAYER'S IDENTIFICATION NUMBER (IN LIEU OF FEDERAL FORM W-9)

State your relationship to the Deceased __Daughter__

Your Social Security No. [■  ■  ]    or Employer Identification No. [   ]

**Certification** Under the penalties of perjury, I certify that this is my correct Taxpayer Identification Number, and that I am not subject to backup withholding. If you are subject to backup withholding, then place a check in the box. ☐

Signature of Beneficiary __Jill L Mix__    Date __05/16/2007__

No./Street __4877 Waterford Way__    City __Gurnee__    State __IL__    Zip Code __60031__

Telephone No. __(847) 360-6913__    Age __38__

1047-92 (11/08)                        (continued on back)

PLACL00017

Case 1:08-cv-08227   Document 1   Filed 06/04/2008   Page 60 of 71

Fax to 7521809 (FISTD800) received at 05/16/2007 21:20:04 from (8662998176).

05/16/2007 20:22 FAX 8662998176          GARNER FFDA          ☑007

Wm Mix 7 of 10

## FRAUD WARNING STATEMENTS

### CLAIM FRAUD WARNING STATEMENTS

For your protection, the laws of several states, including Alaska, Arizona, Arkansas, Delaware, Idaho, Indiana, Kentucky, Louisiana, Minnesota, New Hampshire, Ohio and Oklahoma, and others require the following statement to appear:

#### Fraud Warning

Any person who knowingly, and with intent to injure, defraud, or deceive an insurance company, files a statement of claim containing any false, incomplete, or misleading information is guilty of insurance fraud, which is a felony.

#### Fraud Warning for California Residents

For your protection, California law requires the following to appear:

Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

#### Fraud Warning for Colorado Residents

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

#### Fraud Warning for District of Columbia, Maine and Virginia Residents

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

#### Fraud Warning for Florida Residents

Any person who knowingly and with intent to injure, defraud or deceive any insurance company, files a statement of claim or an application containing false, incomplete or misleading information is guilty of a felony of the third degree.

#### Fraud Statement for New Jersey, New Mexico and Pennsylvania Residents

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

#### Fraud Statement for New York Residents

Any person who knowingly and with the intent to defraud any insurance company or other person files an application for insurance or statement of claim containing materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

#### Fraud Warning for Tennessee Residents

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purposes of defrauding the company. Penalties may include imprisonment, fines and denial of insurance benefits.


## AUTHORIZATION

I authorize any doctor, hospital, practitioner, pharmacist, clinic, other medical facility, or provider of health care, banking or financial institution, insurer or reinsurer, consumer reporting agency, governmental agency, including the Social Security Administration, Medical Information Bureau, Employers and other persons or institutions; to provide UnumProvident Corporation and its representatives data or records you may have regarding the employment, medical history and treatment (including records pertaining to psychiatric, drug or alcohol use history, and but not limited to, information regarding HIV status and test results) and income of the deceased.

I understand that any information pursuant to this authorization will be used to evaluate the claim and may be transferred to any agency, insurance support organization or person employed by UnumProvident Corporation, to assist with this purpose. This authorization is valid during the pendency of the claim. I understand I have the right to request a copy of this authorization and that a copy of this authorization will be sent to me if requested. A photostatic copy of this form will be as valid as the original.

PLACL00018

_____          _5/16/2007_
Beneficiary/Authorized Person's Signature          Date Signed

1047-02 (11/06)

Claimant Name: William L Mix          Claim #: 3419680

Wm Mix 8 of 10

TAZEWELL COUNTY

IN RE:  THE MARRIAGE OF     )
                           )
WILLIAM L. MIX,            )
                           )
         Plaintiff,     )
                           )
     and                )    NO:  04 D 517
                           )
ANGELA L. MANTOVANI,      )
                           )
         Defendant.     )

**FILED**

**MAY 2 5 2006**

Pam Gardner
*TAZEWELL COUNTY CIRCUIT CLERK*
*TENTH JUDICIAL CIRCUIT OF ILLINOIS*

## JUDGMENT OF DISSOLUTION OF MARRIAGE

This cause coming on to be heard upon a verified Petition for Dissolution of Marriage, heretofore filed in the above captioned cause of action by the Plaintiff, WILLIAM L. MIX (hereinafter referred to as the "Plaintiff"); and the Defendant, ANGELA L. MANTOVANI (hereinafter referred to as the "Defendant"), having heretofore executed and filed a Written Response to Petition for Dissolution of Marriage, which said Response has been examined by this Court; and this Court having heard the oral testimony of the Plaintiff, sworn and examined in open Court; and this Court having made a finding that grounds exist pursuant to order entered herein on January 7, 2005; and this Court having heard the arguments and statements of counsel representing the Plaintiff and Defendant; and this Court having now been fully advised in the premises hereof, this Court does hereby find as follows:

PLACL00019

Fax to 7521809 (FISTD800) received at 05/16/2007 21:20:04 from (8662998176). Filed 06/04/2008 Page 62 of 71 Page 9 of 11 pages (C)

05/16/2007 20:23 FAX 8662998176        GARNER FFDA       @009

William Mix
9 of 10

H.  Each party is hereby awarded their own individual checking and savings accounts presently in existence, free and clear of any interest of the other, as well as any other financial accounts in their own names.

I.  The Plaintiff shall pay one-half of the attorney's fees incurred by the Defendant while she was represented by Kirk Bode, but said payment shall not exceed $2,000.00.  Other than the amount paid to Kirk Bode by Plaintiff, each party shall pay his or her own attorney's fees and costs incurred.

J.  The issue of the allocation of life insurance policies and any cash value thereof is reserved.

K.  The parties acknowledge there are no marital debts outstanding at this time, other than as listed herein.  Any debt not listed specifically herein shall be paid by the party who incurred said debt, and that party shall hold the other harmless and indemnified from any liability due thereon.

L.  Both parties shall terminate any joint credit accounts that have the other party listed as a joint obligor. The parties shall transfer any credit accounts into their individual names and shall hold the other party harmless and indemnify the other from any balances due on said credit accounts.

M.  Each party shall execute all title assignments, documents or instruments necessary to effect the transfers cited in this Judgment of Dissolution of Marriage and should either fail or refuse to execute such assignments, documents or

6

PLACL00020

Wm Mix

ID of ID

# LYNCH AND BLOOM, P.C.
## Attorneys at Law

411 Hamilton Blvd., Suite 1300
Peoria, Illinois 61602-1104

Telephone: (309) 673-7415
Fax: (309) 673-3189

May 15, 2006

Mr. Daniel M. Harrod
Attorney at Law
107 E. Eureka Street
Eureka, IL   61530

        RE: Mix v. Mantovani

Dear Dan:

        I have talked to my client and he absolutely objects
to his ex-wife carrying life insurance on him.   This is
martial property belonging to both parties.  He thinks
that each party should own their own policies on their
lives and any cash value of either policy be split between
the parties.    I am enclosing an amended Judgment.
reserving this issue.

                        Very Truly Yours,

                        LYNCH & BLOOM P.C.

                        BY:
                            David M. Lynch

DML:sn
cc: William Mix

PLACL00021

Fax to 7521809 (FISTD800) received at 05/16/2007 21:20:04 from (8662998176).

05/16/2007 20:23 FAX 8662998178        GARNER FFDA        ☑011

| REGISTRATION DISTRICT NO. 72.0 | STATE OF ILLINOIS | STATE FILE NUMBER |
|---|---|---|
| REGISTERED NUMBER 986 | **MEDICAL CERTIFICATE OF DEATH** | |

**DECEASED—NAME** FIRST MIDDLE LAST: **William Lowell Mix**

1. SEX: 2. Male

3. DATE OF DEATH (MONTH, DAY, YEAR): May 8, 2007

4. COUNTY OF DEATH: Peoria

5a. AGE—LAST BIRTHDAY (YRS): 65
5b. UNDER 1 YEAR MOS DAYS
5c. UNDER 1 DAY HOURS MIN

5d. DATE OF BIRTH (MONTH, DAY, YEAR): April 23, 1942

6a. CITY, TOWN, TWP, OR ROAD DISTRICT NUMBER: Peoria
6b. HOSPITAL OR OTHER INSTITUTION—NAME (IF NOT IN EITHER, GIVE STREET AND NUMBER): OSF St. Francis Medical Center
6c. IF HOSP. OR INST. INDICATE D.O.A., OP/EMER. RM, INPATIENT (SPECIFY): Inpatient

7. BIRTHPLACE (CITY AND STATE OR FOREIGN COUNTRY): Ciane, Illinois

8a. MARRIED, NEVER MARRIED, WIDOWED, DIVORCED (SPECIFY): Divorced
8b. NAME OF SURVIVING SPOUSE (MAIDEN NAME, IF WIFE):

9. WAS DECEASED EVER IN ARMED FORCES? (YES/NO): Yes

10. SOCIAL SECURITY NUMBER:
11a. USUAL OCCUPATION: System Engineer
11b. KIND OF BUSINESS OR INDUSTRY: Electric Utility
12. EDUCATION (SPECIFY ONLY HIGHEST GRADE COMPLETED): Elementary/Secondary (0-12) College (1-4 or 5+): 4

13a. RESIDENCE (STREET AND NUMBER): 512 Bittersweet
13b. CITY, TOWN, TWP, OR ROAD DISTRICT NO.: Washington Township
13c. INSIDE CITY (YES/NO): No
13d. COUNTY: Tazewell

13e. STATE: IL
13f. ZIP CODE: 61571
14a. RACE (WHITE, BLACK, AMERICAN INDIAN, etc.) (SPECIFY): White
14b. OF HISPANIC ORIGIN? (SPECIFY NO OR YES—IF YES, SPECIFY CUBAN, MEXICAN, PUERTO RICAN, etc.): ☒ NO ☐ YES SPECIFY:

15. FATHER—NAME FIRST MIDDLE LAST: Charlie Mix
16. MOTHER—NAME FIRST MIDDLE (MAIDEN) LAST: Rosamond Anderson

17a. INFORMANT'S NAME (TYPE OR PRINT): Jill Garner
17b. RELATIONSHIP: Daughter
17c. MAILING ADDRESS (STREET AND NO. OR R.F.D., CITY OR TOWN, STATE, ZIP): 22 Corvette Lane Carthage, TN 37030

**18. PART I.** Enter the diseases, injuries or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line.

Immediate Cause (Final disease or condition resulting in death)
(a) anexic encephalopathy — 2 d
DUE TO, OR AS A CONSEQUENCE OF

CONDITIONS, IF ANY WHICH GIVE RISE TO IMMEDIATE CAUSE (b) out of hospital cardiac arrest — 2 d
STATING THE UNDERLYING CAUSE LAST. DUE TO, OR AS A CONSEQUENCE OF
(c) acute inferior myocardial infarct — 2 d

APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH

PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in PART I.

19a. AUTOPSY (YES/NO): No
19b. WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH (YES/NO): No

20a. DATE OF OPERATION, IF ANY:
20b. MAJOR FINDINGS OF OPERATION:
20c. IF FEMALE, WAS THERE A PREGNANCY IN PAST THREE MONTHS? YES ☐ NO ☐

21a. I DID/DID NOT ATTEND THE DECEASED AND LAST SAW HIM/HER ALIVE ON (MONTH, DAY, YEAR): 5-8-09
21b. TO THE BEST OF MY KNOWLEDGE, DEATH OCCURRED AT THE TIME, DATE AND PLACE AND DUE TO THE CAUSE(S) STATED. WAS CORONER OR MEDICAL EXAMINER NOTIFIED? (YES/NO): No
21c. HOUR OF DEATH: 7:36 PM

22a. SIGNATURE ▶ Craig Ihrig
22b. DATE SIGNED (MONTH, DAY, YEAR): 5-8-07

22c. NAME AND ADDRESS OF CERTIFIER (TYPE OR PRINT): 5405 N Knoxville Peoria IL
22d. ILLINOIS LICENSE NUMBER: 030070200

23. NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (TYPE OR PRINT):
NOTE: IF AN INJURY WAS INVOLVED IN THIS DEATH THE CORONER OR MEDICAL EXAMINER MUST BE NOTIFIED.

24a. BURIAL, CREMATION, REMOVAL (SPECIFY): Cremation
24b. CEMETERY OR CREMATORY—NAME: Heartland Cremation Services
24c. LOCATION CITY OR TOWN: Metamora
STATE: IL
24d. DATE (MONTH, DAY, YEAR): May 12, 2007

25a. FUNERAL HOME NAME: Mason-White Funeral Home
STREET AND ROAD OR R.F.D.: 20 Valley Forge Road
CITY OR TOWN: Washington, Il
ZIP: 61571

26a. FUNERAL DIRECTOR'S SIGNATURE ▶ Michael R. Wilfong
25c. FUNERAL DIRECTOR'S ILLINOIS LICENSE NUMBER: 034-015285

26b. LOCAL REGISTRAR'S SIGNATURE ▶ Andrew J. Parker
26c. DATE FILED BY LOCAL REGISTRAR (MONTH, DAY, YEAR): May 9, 2007

VR200 (Rev. 5/89)   Illinois Department of Public Health—Division of Vital Records   BASED ON 1989 U.S. STANDARD CERTIFICATE

PLACL00022

---

**CERTIFIED COPY OF VITAL RECORDS**

STATE OF ILLINOIS )
                  ) ss
COUNTY OF PEORIA )

This is to certify that this is a true and correct copy of the official record filed with the Illinois Department of Public Health.

DATE ISSUED:

MAY 0 9 2007        Andrew L. Parker, MS, RN

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# COMPLAINT

# EXHIBIT G

STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT

TAZEWELL COUNTY - IN PROBATE

**FILED**
JUN 14 2007
TAZEWELL COUNTY
TENTH JUDICIAL CIRCUIT CLERK

IN THE MATTER OF THE ESTATE OF )
)   No. 07-P- 208
WILLIAM L. MIX, DECEASED. )

### LETTERS OF OFFICE-DECEDENT'S ESTATE

JILL GARNER has been appointed Administrator of the Estate of WILLIAM L. MIX,

Deceased, who died May 8, 2007, and is authorized to take possession of and collect the estate of

the Decedent, and to do all acts required of her by law.

Witness, *June 14*              , 2007

(Seal of Court)

*Pam Gardner*
(Clerk of the Circuit Court)

---

### CERTIFICATE

I certify that this is a copy of the Letters of Office now in force in this estate.

*June 14*              , 2007.

(Seal of Court)

*Pam Gardner*
(Clerk of the Circuit Court)

---

Louis E. Miller, Esq.
Bagley & Miller
Attorneys for Executor
P. O. Box 669
Pekin, Illinois 61555-0669
Telephone: (309) 346-2161

PLACL00053

# COMPLAINT

# EXHIBIT H

LAW OFFICES

# BAGLEY & MILLER

FRINGS BUILDING - 6 SOUTH FOURTH STREET
P.O. BOX 669
PEKIN, ILLINOIS 61555-0669
309-346-2161

**RECEIVED**

**JUN 29 2007**

**12**

C.V. FRINGS (1906-1977)
R.A. MILFORD (1914-1963)
B.F. HOFFMAN (1912-1972)

F.E.I.N. 37-0707840
FACSIMILE 309-346-6387

J.R. BAGLEY
LOUIS E. MILLER

June 26, 2007

Unum Provident
Provident Life & Accident Insurance Company
The Benefits Center
P.O. Box 100158
Columbia, South Carolina 29202-3158

Attn:   Ms. Kelly Logan
        Lead Benefits Specialist

        Re:     Contract: 937901
                Insured: W. L. Mix
                <u>Claim No. 3419680</u>

Dear Ms. Logan:

        Please be advised that I am the attorney who represents the Estate of William L. Mix.

        As you have previously been advised my Mr. Mix's daughter, Jill Garner, Mr. Mix died intestate on May 8, 2007, a resident of Tazewell County, Illinois. On June 14, 2007, the Tazewell County Circuit Court entered an order appointing Jill Garner as Administrator of her father's estate. For your records, I am enclosing herein a letter from Jill Garner authorizing your company to disclose to me any and all information or documents you might have pertaining to any policies owned by her father with your company.

        By this letter, I am requesting, on behalf of Jill Garner, for certain information pertaining to the above-mentioned life insurance policy owned by Mr. Mix through your company at the time of his death. In particular, please advise me as to the amount of the death benefit and the name or names of the designated beneficiary or beneficiaries.

PLACL00050

LAW OFFICES
# BAGLEY & MILLER
FRINGS BUILDING · 6 SOUTH FOURTH STREET
P.O. BOX 669
PEKIN, ILLINOIS 61555-0669
309-346-2161

C.V. FRINGS (1906-1977)
R.A. MILFORD (1914-1963)
B.F. HOFFMAN (1912-1972)
—
F.E.I.N. 37-0707840
FACSIMILE 309-346-6387

J.R. BAGLEY
LOUIS E. MILLER

Ms. Kelly Logan
Lead Benefits Specialist
Unum Provident
Provident Life & Accident Insurance Company
June 26, 2007
Page 2

     If the beneficiary or beneficiaries are anyone other than Jill Garner, or her two sisters, Jan Mix or Joy Mix, we also request that you provide us with copies of the life insurance policy itself; the application for such life insurance; any written designations or change of beneficiary documents pertaining to such policy; as well as any correspondence you might have pertaining to the designation of such beneficiary or beneficiaries.

     As you are aware from previous correspondence from my client, Jill Garner, her father was divorced from Angela L. Mantovani prior to his death. In the course of that divorce proceedings, Mr. Mix made it quite clear that he did not want his ex-wife carrying any life insurance on himself. At this time, I would dispute on behalf of the estate, the legal right of Angela L. Mantovani to claim any part of the proceeds in the aforesaid policy or any other life insurance be it with your company, or any other company.

     Finally, please be so kind as to advise if Mr. Mix owned or was named as insured on any other life insurance policies with your company. If yes, please advise me as to the policy number(s), the death benefits of such policy or policies, and the beneficiary or beneficiaries of each such policy.

     Thank you for your prompt assistance on this matter.

     Very truly yours,

Louis E. Miller

LEM/jlb
Enclosures
cc: Jill Garner ( )

PLACL00051

# COMPLAINT

# EXHIBIT I

Fax to 7521809 (FISTD800) Case 1:08-cv-00322-76:14 Doc (Unavailable).    Filed 06/04/2008    Page 71 of 71   Page 1 of 8 pages (C)

Nov 12 07 10:37a                                             p.1



## PROOF OF DEATH

The Benefits Center
PO Box 100158
Columbia, SC 29202-3158



02875001215341701

## INSTRUCTIONS

**IMPORTANT: Before completing this form, read the instructions, fraud statements, sign and date on reverse side.**
**For Toll Free Assistance Call: 1-800-874-7481    Fax: 207-575-7133**

1. Beneficiary's Statement must be made by the person to whom the insurance is payable. If there is more than one beneficiary, all may join in one statement, or a separate Proof of Death form can be submitted for each beneficiary.
2. When the insurance is payable to a named beneficiary of legal age, the statement must be made by such beneficiary.
3. Include a copy of a certified death certificate.
4. If any named beneficiary predeceases the Insured, it will be necessary to submit a copy of a certified death certificate for each such beneficiary.
5. Please sign at bottom of back page.

## BENEFICIARY'S STATEMENT

Deceased's Name _William L. Mix_   Date of Birth _04/23/43_   Social Security Number _____ , Sex ☒ M ☐ F

No./Street _512 W. Bittersweet_   City _Washington_   State _IL_   Zip Code _61571_

Policy No. _344349397 01_   Amount of Insurance $ _____

Date of Death _05/08/2002_   Place of Death _St. Francis  Peoria, IL_

Cause of Death _Heart attack_   Date deceased first consulted physician for last illness _05/06/2007_

Name and address of all physicians who attended Deceased during last illness and during three years prior:

| NAME | ADDRESS | DATES OF ATTENDANCE | DISEASE OR CONDITION |
|------|---------|---------------------|----------------------|
|      |         |                     |                      |
|      |         |                     |                      |
|      |         |                     |                      |

If death due to injury, please explain accident in detail _____

Date of Injury __ __ / __ __ / __ __ __ __

## REQUEST FOR TAXPAYER'S IDENTIFICATION NUMBER (IN LIEU OF FEDERAL FORM W-9)

State your relationship to the Deceased _Ex. Wife_

Your Social Security No. [_____]   or Employer Identification No. [_____]

**Certification** Under the penalties of perjury, I certify that this is my correct Taxpayer Identification Number, and that I am not subject to backup withholding. If you are subject to backup withholding, then place a check in the box. ☐

Signature of Beneficiary _Angela L. Martini_   Date _11/12/2007_

No./Street _116 S. Columbus_   City _N. Pekin_   State _IL_   Zip Code _61554_

Telephone No. _(309) 696-0602_   Age _45_

PLACL00081